*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JOYCE A. del ROSARIO, f/k/a JOYCE A. CLARE, | ) ) ) | Supreme Court No. S-15955 |
| Appellant, | ) ) | Superior Court No. 3AN-09-07066 CI |
| v. | ) ) | O P I N I O N |
| KENNETH A. CLARE, | ) ) | No. 7120 – August 26, 2016 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Joyce A. del Rosario, pro se, Beaverton, Oregon, Appellant. Vikram N. Chaobal, Law Offices of Vikram N. Chaobal, LLC, Anchorage, for Appellee.

Before: Winfree, Maassen, and Bolger, Justices. [Stowers, Chief Justice, not participating.]

BOLGER, Justice.

## I.     INTRODUCTION

The superior court modified a child custody decree, granting sole legal custody and primary physical custody to the child's father and setting a visitation schedule. The mother picked the child up for summer visitation but did not share her travel plans with the father and did not answer the phone or otherwise respond when the

father called for telephonic visitation with the child. After five days with no word from the mother or the child, the father filed a motion to show cause. The court ordered the mother to place the child on the phone at the scheduled telephonic visitation times, to keep the father informed of the child's address and travel dates, and to give the child a telephone provided by the father to facilitate their telephonic visitation. The mother appeals, arguing that the custody decree did not give the father any telephonic visitation rights and that the court impermissibly modified the decree. She also argues that she did not receive adequate notice of the father's motion. We conclude that the court's orders were within its inherent power to interpret and enforce the custody decree and that the mother received adequate notice of the father's motion.

## II.     FACTS AND PROCEEDINGS

Joyce del Rosario and Kenneth Clare were married in 2005 and have one child together, Kevin.[1] They divorced in 2010, and after a custody trial, the court gave both parents shared physical custody of Kevin but awarded sole legal custody of Kevin to Kenneth for one year, after which legal custody would revert to shared legal custody.

In March 2014 Joyce informed Kenneth that she planned to move out of Alaska. In response Kenneth moved to modify the custody decree, requesting primary physical and legal custody of Kevin and "ample visitation during the summer months and for holidays" for Joyce.

The court held a trial on Kenneth's motion over three days in January and February 2015 and made oral findings on the record after the close of trial. It weighed

---

[1]     A pseudonym has been used to protect the child's privacy.

the custodial factors under AS 25.24.150[2] and determined that most of the factors weighed in Kenneth's favor. It found that Kenneth's household was "a healthy and satisfactory environment," and it found that Joyce had unjustifiably prevented Kevin from talking with Kenneth while in her custody. Based on these findings, it awarded Kenneth primary physical custody and sole legal custody of Kevin.

The court issued its written findings of fact and conclusions of law, along with a modified custody decree, on May 8, 2015. The decree awarded Kenneth primary physical and sole legal custody and set out a visitation schedule. The schedule provided for Joyce to have visitation with Kevin during his summer vacation and provided that Kevin "shall be allowed to contact the non-custodial parent freely and without interference of the custodial parent at every Tuesday, Thursday, and Sunday at 7:30 pm Alaska Time." It also required Joyce to "provide address and phone number contact information to [Kenneth] 10 days prior to . . . [Kevin]'s . . . travel."

On May 21 Joyce emailed Kenneth informing him that she planned to pick up Kevin for her summer visitation on May 24, a Sunday. Kenneth asked her for more information: dates of visitation, "[g]ood contact numbers, the address [Kevin] will be at, etc." Joyce responded only that she planned to have custody of Kevin until two weeks before school began and that "[l]ocation varies." When pressed she provided her Alaska and Oregon addresses but did not specify when she planned to be at those addresses with Kevin.

Joyce picked up Kevin on May 24. Kenneth called her that evening for his scheduled visitation with Kevin, but she did not answer the phone. After calling three

---

    ² AS 25.24.150(c) provides that "[t]he court shall determine custody in accordance with the best interests of the child . . . . In determining the best interests of the child the court shall consider" eight specific factors as well as "other factors that the court considers pertinent."

times, he left a voicemail stating he was trying to reach Kevin. The same thing happened when Kenneth called for visitation on Tuesday, May 26, and Thursday, May 28.

On May 29 Kenneth filed a motion to show cause and a motion for expedited consideration. Joyce was served with the motions by email and by mail sent to the two addresses she had provided. Kenneth stated that "[Kevin] ha[d] not been heard from since" being picked up by Joyce on May 24 and that Joyce had denied him three scheduled telephonic visitations. He requested an order that Joyce appear at a hearing to "show cause for her conduct, and to formally declare where this child is going to be, and to allow telephonic visitation."

The court granted the motion for expedited consideration on June 1 and held a hearing on the motion to show cause on June 2. Kenneth attended telephonically, but Joyce did not appear. The court observed that Joyce appeared to be violating the custody decree by not permitting telephonic visitation with Kevin. It stated that "[i]t was the intention of the court, and if I misspoke then I need to correct it, . . . that the minor child shall be placed on the phone" at the specified times "and in addition to that, any time [Kevin] wants to get on the phone, that he be allowed free access without interference." It also emphasized that "disclosure of the physical address and the actual address where the child will be at all times is something that is required by the court."

The court issued an order following the hearing that it characterized as "Clarifying Telephonic Visitation with Father and Child." The order provided:

> Telephonic visitation with the father is not at the discretion of the child. Telephonic visitation will be on Tuesdays, Thursdays[,] and Sundays. The child, if he chooses, can contact his father at any time and shall be allowed to do so.
>
> Ms. del Rosario[] will provide Mr. Clare the physical location and dates that the child will be residing in Alaska or

Oregon.  Mr. Clare must also provide the same to Ms. [d]el Rosario.

Both parties appeared at a status hearing on June 18.  Kenneth reported that he had been speaking regularly with Kevin and that he "ha[d] an idea" where Kevin was living because Joyce's husband had informed him that they were in Oregon.  At Kenneth's request the court orally ordered Joyce to give Kevin a telephone provided by Kenneth's attorney, to "give [Kevin] the ability to keep it charged, and [to] allow [Kevin] to have it for purposes of contacting his father."

Joyce appeals the clarifying order and the order issued at the status hearing.

## III.   STANDARD OF REVIEW

We determine de novo whether a superior court order modifies a final decree or merely enforces it.[3]  If the order enforces rather than modifies, we review the order for abuse of discretion.[4]  "A decision constitutes abuse of discretion if it is 'arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive.' "[5]  We review de novo whether a party received due process,[6] "adopting 'the rule of law that is most persuasive in light of precedent, reason, and policy.' "[7]

---

[3]     *Horchover v. Field*, 964 P.2d 1278, 1282 (Alaska 1998).

[4]     *Id.*

[5]     *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016) (omission in original) (quoting *Roderer v. Dash*, 233 P.3d 1101, 1107 (Alaska 2010)).

[6]     *Grimmett v. Univ. of Alaska*, 303 P.3d 482, 487 (Alaska 2013) (citing *James v. State, Dep't of Corr.*, 260 P.3d 1046, 1050 (Alaska 2011)).

[7]     *Philip J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 264 P.3d 842, 846 (Alaska 2011) (quoting *Jeff A.C., Jr. v. State*, 117 P.3d 697, 702 (Alaska 2005)).

This case also involves the superior court's interpretation of its own order. Although we have not specifically articulated a standard of review for this situation,[8] enforcement of an order — reviewed for abuse of discretion — necessarily involves interpretation of that order,[9] and we have previously explained the abuse-of-discretion standard for enforcement by pointing out that the court that entered the original order is in the best position to interpret its own order.[10] Accordingly, we review the superior court's interpretation of its own order for abuse of discretion.[11]

---

[8] We review an interpretation of an order that incorporates a settlement agreement de novo, but this is because the agreement is treated as a contract between the parties. *Gaston v. Gaston*, 954 P.2d 572, 574 (Alaska 1998). The custody decree at issue in this case did not incorporate any agreement between the parties.

[9] *See Carnahan v. Romine*, No. S-12076, 2007 WL 3317825, at *6 (Alaska Nov. 7, 2007).

[10] *See Johnson v. Johnson*, No. S-12891, 2009 WL 564692, at *4 (Alaska Mar. 4, 2009) ("[T]he superior court, as the author of the interim order, was in the best position to decide what it had intended when it entered the interim order."); *Carnahan*, 2007 WL 3317825, at *6 ("[T]he meaning of a divorce decree is best interpreted by the superior court itself; for this reason we review orders enforcing property divisions in divorce decrees for abuse of discretion." (citing *Horchover v. Field*, 964 P.2d 1278, 1281 (Alaska 1998))). For this reason we do not take up our brief indication in *Gallant v. Gallant* that de novo review may be appropriate in this circumstance. 945 P.2d 795, 802 n.13 (Alaska 1997).

[11] The deference due to a superior court's interpretation of an order may vary depending on the circumstances. For example, Maine courts give particular deference when "the judge who clarified the judgment is also the judge who initially issued the judgment." *Voter v. Voter*, 109 A.3d 626, 630 (Me. 2015). Here, the same judge who issued the modified custody decree issued the clarifying order less than one month later.

## IV. DISCUSSION

### A. The Superior Court Did Not Impermissibly Modify The Custody Decree.

Joyce argues that the court's clarifying order and its later oral order, which required her to facilitate access to the provided telephone, impermissibly modified the custody decree. She points to four alleged modifications: (1) she claims that the custody decree did not grant Kenneth *any* telephonic visitation rights; (2) she argues that the clarifying order unreasonably required her to provide constant real-time updates of Kevin's physical location, in addition to the address and contact information required by the decree; (3) she claims that the clarifying order made visitation non-discretionary on Kevin's part, while the decree simply required Joyce to allow him to call Kenneth if he wishes; and (4) she points out that the requirement that she give Kevin the telephone appeared nowhere in the decree. The first two of these arguments are based on misinterpretations of the court's orders, and the second two fail because those aspects of the court's orders were within the court's inherent authority to enforce the custody decree.[12]

### 1. The custody decree granted Kenneth telephonic visitation rights.

Joyce's primary argument on appeal is that the custody decree did not grant Kenneth *any* visitation rights while Kevin was in her physical custody, and therefore the clarifying order impermissibly modified the original decree by granting Kenneth visitation. The original decree provided: "The minor child shall be allowed to contact the non-custodial parent freely and without interference of the custodial parent" at specified days and times. Joyce apparently interprets "non-custodial parent" to refer only to herself, the parent without legal custody, and concludes that the custody decree did not

---

[12] Because the court did not modify the decree, we also reject Joyce's argument that the alleged modifications violated her due process rights.

require her to allow Kevin to contact Kenneth, the "custodial parent." The superior court interpreted its decree to grant Kenneth visitation rights when he did not have physical custody of Kevin, as evidenced by the clarifying order and by the court's comments at the June 2 and June 18 hearings. Joyce thus essentially challenges the court's interpretation of its own decree.

Interpreting an order requires discerning the intent of the issuing court.[13] All parts of an order are read together and are considered as a whole.[14] When written and oral rulings are not inconsistent "the transcript [of the oral ruling] should properly be considered."[15] "The record [also] should be taken into consideration in determining the intent, scope[,] and effect of an order."[16] Although the contested provision of the decree is arguably ambiguous, Joyce's interpretation that the decree did not grant Kenneth *any* visitation is implausible, especially given the court's factual findings.

Read as a whole, the custody decree supports the superior court's interpretation. Generally, the decree refers either to "Mother" or "Father" or to "Defendant" or "Plaintiff" when addressing a specific party. The provision in question is the only point at which the decree refers to the "custodial parent" or to the "non-custodial parent." If this provision were meant to grant telephonic visitation rights to

---

[13]     *See Riggs v. Coonradt*, 335 P.3d 1103, 1109 (Alaska 2014) (remanding to superior court because of "doubt as to whether the court intended to incorporate" a changed visitation schedule into a signed custody decree); *Feichtinger v. State*, 779 P.2d 344, 347 (Alaska App. 1989) ("Generally, where a trial court order is susceptible of two independent interpretations and it is impossible to determine which motivated the trial judge, a remand for clarification is necessary.").

[14]     *Johnson v. Johnson*, 544 P.2d 65, 69 n.5 (Alaska 1975).

[15]     *Ronne v. Ronne*, 568 P.2d 1021, 1023-24 (Alaska 1977) (quoting *Johnson*, 544 P.2d at 69 n.5).

[16]     *Id.* (quoting *Johnson*, 544 P.2d at 69 n.5).

Joyce but not to Kenneth, it likely would have stated either that "[Kevin] shall be allowed to contact Mother" or that "[Kevin] shall be allowed to contact Plaintiff." Instead, the use of "custodial" and "non-custodial" signals that the custodial parent would sometimes be the mother and sometimes be the father.

The court's oral and written findings also support its interpretation. After trial, the court specifically found that Joyce was preventing Kevin from calling Kenneth and that she was falsely stating Kevin did not want to talk to his father. It reiterated this concern in its written findings of fact. It would be surprising for the court to admonish Joyce for interfering with Kenneth's telephonic visitation rights if it had removed any such rights in its custody decree, especially considering that Kevin would be in Joyce's custody for most of his summer vacation. Moreover, there is no indication in the record that the court intended to restrict Kenneth's telephonic visitation rights. The court awarded sole legal custody to Kenneth and found nearly every custodial factor weighed in his favor; one would expect the court to explain or make its intent explicit if it intended to restrict Kenneth's access to Kevin while he is in Joyce's custody.

The superior court accordingly did not abuse its discretion by interpreting its decree to grant Kenneth telephonic visitation or by ordering Joyce to permit such visitation in its clarifying order.[17]

---

[17] Under this interpretation, Joyce's claim that the clarifying order set no specific time for Kevin's visits with Kenneth while the original order set a time of day for her own visits also fails. Because the original order required both parents to allow Kevin to contact the other "every Tuesday, Thursday, and Sunday at 7:30 pm Alaska Time," the clarifying order did not require her or Kevin to "make numerous attempts at contacting [Kenneth] for hours on end" on those days. Instead, it simply required her to comply with the original order by placing Kevin on the phone at 7:30 p.m. Alaska time.

## 2. The court did not order Joyce to provide real-time updates of Kevin's location.

Joyce also argues that the court's oral order following the June 18 hearing modified the custody decree by requiring her to give constant updates of Kevin's location to Kenneth, "even in real time while mother and child may be in transit from one point to another." She does not explain how she reached this interpretation of the June 18 order, but the court did make two statements that could arguably support this interpretation. The court stated that Joyce should "be sharing the location of [Kevin], where he is going to be from day to day, who's going to be taking care of him, and how to get him on the phone," and it closed the hearing by stating that "there should be no time in which either parent is wondering where [Kevin] is or how to get a hold of him."

Joyce's interpretation of the court's statements is implausible in the context of these proceedings. The June 18 hearing was a status hearing following the clarifying order, which required Joyce to "provide [Kenneth] the physical location and dates that [Kevin] will be residing in Alaska or Oregon." Joyce had not done so before taking custody in May, despite the decree's requirement that she "provide address and phone number contact information to [Kenneth] 10 days prior to . . . [Kevin]'s . . . travel." Instead, she informed Kenneth that "[l]ocation varies," provided her addresses in Alaska and Oregon, but failed to disclose *when* she and Kevin would be at either address. In this context, the court's comments at the June 18 hearing are best read as instructing Joyce to tell Kenneth *when* Kevin will be residing at a given address, instead of simply providing a list of possible locations and leaving Kenneth to guess where Kevin might be at any given time.

### 3. The court's other orders were within its inherent authority to enforce the custody decree.

Joyce points to two alleged modifications that do seem to impose additional obligations on the parties. First, the clarifying order declared that telephonic visitation with Kenneth "is not at the discretion of the child," while the original custody decree stated that Kevin "shall be allowed to contact the non-custodial parent." Second, at the June 18 hearing the court orally required Joyce to bring a particular telephone to Kevin for contacting his father; no such requirement is found in the original custody decree.[18]

Joyce argues that the clarifying order and the subsequent oral order imposed new substantive burdens not contemplated by the original decree, and were therefore impermissible modifications. But the superior court has the inherent power, as well as the duty, to enforce its decrees.[19] By enforcing the custody decree through those means, the court did not abuse its discretion.

Courts may impose additional burdens when necessary to enforce their decrees. In *Horchover v. Field*, we held that the superior court had the inherent power to order a party to a divorce to provide an accounting of his assets.[20] Although the divorce decree did not require an accounting, requiring one was "in reality . . . the only way for the court to determine whether" the husband was violating the decree as the wife

---

[18]    Joyce suggests that the court's order provides that Kevin may *only* contact his father from this telephone and may not use a different telephone. She is incorrect; the language of the order contains no such requirement and it is implausible that the court intended to limit Kevin's ability to communicate with Kenneth.

[19]    *Wahl v. Wahl*, 945 P.2d 1229, 1232 (Alaska 1997).

[20]    964 P.2d 1278, 1285 (Alaska 1998).

alleged,[21] particularly "in light of [his] demonstrated willingness to ignore his obligations under the agreement."[22]   And in *State, Department of Revenue, Child Support Enforcement Division v. Deleon*, we held that the superior court's inherent power to enforce its decrees authorized the court to enforce a child support order by requiring a delinquent parent to apply for the permanent fund dividend.[23]  We noted that "[t]here is particular justification for such action by a court when necessary to preserve the rights of children";[24] a court "not only has the right, but . . . [a] duty to make its decrees effective and to prevent evasions thereof."[25]  In honoring this obligation, the court may "make 'alterations necessary to obtain a result altogether consistent with the original decree.' "[26]

The superior court's orders fit this rubric.  With respect to the provision that "visitation . . . is not at the discretion of the child," it appears the court aimed to ensure that Joyce actually facilitated such visitations instead of failing to answer the phone or to call Kenneth at the appointed hour.  In its oral findings, the court detailed its concern that Joyce was unjustifiably interfering with Kevin's telephonic visitation with Kenneth;

---

[21]     *Id.* at 1284.

[22]     *Id.* at 1285.

[23]     103 P.3d 897 (Alaska 2004).  Alaska Statute 22.10.025(b) now explicitly authorizes the superior court to apply for a permanent fund dividend, but this statute was not in effect when the superior court in *Deleon* issued its order.  *Compare* ch. 108, § 11, SLA 2004 (effective July 1, 2004), *with Deleon*, 103 P.3d at 898 (superior court order issued in 2003).

[24]     *Deleon*, 103 P.3d at 899 (quoting *Johnson v. Johnson*, 544 P.2d 65, 72 (Alaska 1975)).

[25]     *Id.* (quoting *Johnson*, 544 P.2d at 72).

[26]     *Id.* (quoting *Johnson*, 544 P.2d at 72).

it specifically rejected Joyce's assertion that Kevin was afraid of his father and did not want to talk with him. The court's concern was reasonably aggravated when Joyce dropped out of contact immediately after taking physical custody of Kevin for the summer, causing Kevin to miss three telephonic visitations with his father without explanation. As in *Horchover*, Joyce's apparent recalcitrance meant that "in reality" the only way to ensure that Joyce allowed Kevin to speak with his father was to order her to place him on the phone.[27] And the result — that Kevin has the opportunity to speak with his father at the designated times — was "altogether consistent with the original decree."[28] Thus the order was "a reasonable . . . way of ensuring that [Joyce] is honoring the court's decree,"[29] and as such, it was within the court's inherent power to enforce the custody decree.

Similarly with respect to the provided telephone, the court determined that providing Kevin with his own telephone for visitation was a proper method of ensuring Kevin could speak with his father. Given Joyce's history of interfering with Kenneth's communications with Kevin, the requirement that Joyce provide the phone also was a reasonable way of ensuring that Joyce allows Kevin to contact his father per the decree.

### B.    Joyce Received Sufficient Notice Of And Opportunity To Respond To Kenneth's Motions.

Joyce also argues that she did not receive adequate notice of Kenneth's

---

[27]    *Horchover*, 964 P.2d at 1284; *see also Deleon*, 103 P.3d at 899 ("There is particular justification for such action by a court when necessary to preserve the rights of children." (quoting *Johnson*, 544 P.2d at 72)).

[28]    *Deleon*, 103 P.3d at 899 (quoting *Johnson*, 544 P.2d at 72).

[29]    *Horchover*, 964 P.2d at 1285.

motions to show cause and to expedite consideration.[30]  She claims that she was only served by email, despite never having consented to email service, and that she did not have enough time to respond to the motions.[31]  But the certificates of service for the motions indicate that they were *mailed* to Joyce on May 29; the court order granting expedited consideration was mailed to her on June 1.  At the June 2 hearing, Kenneth's attorney reported that he had served Joyce by certified mail at both of the addresses she had provided as well as by email, and in an affidavit he stated that he called Joyce on May 28 and left a message informing her that he intended to file the motions.  Joyce was thus served properly pursuant to Alaska Civil Rule 5(b), which provides that service may be made by first class mail to a party's last known address and that service is complete upon mailing.  Kenneth's attorney additionally used every other method at his disposal to notify Joyce of the motions.  Given the urgency of the situation, this supplied Joyce with reasonable notice and a reasonable opportunity to respond to Kenneth's motions.[32]  Furthermore, Joyce was present at the June 18 hearing and had the opportunity to address

---

[30]  Although this argument does not appear in Joyce's statement of points on appeal, it does appear in her brief; we address it here with the "leniency . . . afforded pro se litigants" in mind.  *Kaiser v. Sakata*, 40 P.3d 800, 803 (Alaska 2002) (citing *Noey v. Bledsoe*, 978 P.2d 1264, 1270 (Alaska 1999)).

[31]  *See* Alaska R. Civ. P. 5.1(c)(2) (permitting service by email on "a person who has consented to be served in this manner").  Joyce suggests that she was constrained by time because she could only respond to Kenneth's motion by mail, but Alaska Civil Rule 77(g) expressly allows responses to motions for expedited consideration "in person, by telephone or in writing."  Alaska R. Civ. P. 77(g)(6)–(7).

[32]  *See* Alaska R. Civ. P. 77(g)(6) ("The court may not grant the motion for expedited consideration prior to allowing the opposing party a reasonable opportunity to respond . . . absent compelling reasons for a prompt decision and a showing that reasonable efforts were made to notify the opposing party of the motion for expedited consideration in time to allow a reasonable opportunity to respond.").

the issues raised in Kenneth's motion and the propriety of expedited consideration; she raised no procedural concerns at that time.

## V.    CONCLUSION

We AFFIRM the superior court's orders.