NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| WALLY DEAN JACKSON, | ) |
| | ) Supreme Court No. S-17051 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-07489 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| TAMARA VON GEMMINGEN, | ) AND JUDGMENT[*] |
| | ) |
| Appellee. | ) No. 1746 – October 30, 2019 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Frank A. Pfiffner, Judge.

Appearances: Christopher V. Hoke, Anchorage, for Appellant. D. Scott Dattan, Anchorage, for Appellee.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

## I. INTRODUCTION

Following trial in this divorce case, the superior court made oral findings of fact and conclusions of law that included provisions for an order allowing the wife to retrieve her personal belongings from property retained by the husband. On appeal, the husband contends that when the court reduced its findings and conclusions to written form it substantially deviated from its oral order without explanation, extending the wife's time for retrieving her property and omitting certain logistical constraints. The

---

[*]    Entered under Alaska Appellate Rule 214.

husband also takes issue with the superior court's finding that by selling property owned by a corporation without the knowledge or consent of his wife, the corporation's co-owner, he violated "corporate law."

We conclude that the superior court's written orders did not substantially deviate from its oral orders. We review the court's finding that the husband violated corporate law for plain error, concluding that it is based on undisputed facts and has an apparent, and largely unchallenged, legal basis. We therefore affirm the superior court's orders.

## II.    FACTS AND PROCEEDINGS

Tamara Von Gemmingen and Wally Jackson were married in May 2015; Von Gemmingen filed for divorce two years later. The couple's property included joint ownership of a corporation called Alaska Otter, Inc., which according to the trial exhibits was formed on March 27, 2015, about two months before the parties were married.

The court held a trial on property division in February 2018 and entered findings of fact and conclusions of law orally on February 22. The court found that Alaska Otter owned two pieces of real property that were the couple's major assets: a café and house in Seldovia. Jackson contended at trial that the two pieces of property were not part of the marital estate because he had sold them to a friend in November 2017, after the couple separated, through a different corporation he owned. But the court found that this purported sale violated a June 2017 domestic relations initial order prohibiting either party from selling or disposing of "any marital or disputed property." The court also found that Von Gemmingen only learned of the purported sale at trial, in violation of her rights as a co-owner of Alaska Otter. The court decided, however, that allowing the sale to stand resulted in "the least damaging economic consequence," and it therefore allocated assets and debt based on the sale as a fait accompli.

Also at issue was personal property such as furniture, a television set, and a wedding dress that belonged to Von Gemmingen but remained on the Seldovia property. The court stated its intent to issue an order "that allows her access to the property for the next 90 days to go in at will and take all of these assets," along with a writ of assistance if she felt she needed it for her safety. During a discussion with Jackson's counsel, however, the court refined the scope of Von Gemmingen's access: she could remove her things "anytime between 8 a.m. and 10 p.m." and was limited to one visit of no more than two days' duration during the order's 90-day term. Any property that Von Gemmingen was unable to retrieve during that time would be forfeited to Jackson.

The superior court issued written findings of fact and conclusions of law 25 days later, on March 16. Addressing Von Gemmingen's personal property, the findings and conclusions read, in part: "[Von Gemmingen] shall have access to the property for the next 90 days to obtain and remove these assets. She is entitled to a writ of assistance to be issued to any state or local law enforcement officer." On the same day the court signed a writ of assistance, adding an effective date of March 19.

Jackson moved for reconsideration, contending, among other things, that the court's written order and writ of assistance for Von Gemmingen's retrieval of her personal property differed from its oral remarks in two ways: first, the written order and the writ failed to limit the hours during which Von Gemmingen could retrieve the property; and second, by providing Von Gemmingen 90 days access as of March 19, the date of the written order, the court gave her 28 more days than if the 90 days had begun to run as of the date of the oral decision on the record. The court denied reconsideration.

Jackson raises two issues on appeal. He argues (1) that the superior court abused its discretion by signing a written order that deviated without explanation from its earlier oral order governing Von Gemmingen's retrieval of her personal property; and

(2) that the court erred by including in its written findings of fact and conclusions of law a finding that Jackson "violated corporate law" by his purported sale of Alaska Otter's property without Von Gemmingen's knowledge or consent.

## III. STANDARD OF REVIEW

"We have held that a trial court abuses its discretion when it adopts, without explanation or change, proposed findings of fact and conclusions of law that substantially deviate from the court's earlier oral decision."[1] We review a trial court's factual findings "under a clearly erroneous standard[;]" that is, we will reverse only "when we are left with a definite and firm conviction that the trial court has made a mistake."[2] We review "legal conclusions de novo" and "resolve mootness issues using our independent judgment because applying the mootness doctrine presents a question of law."[3]

We review issues that were not preserved in the trial court for plain error, reversing only if we find "an obvious mistake . . . which creates a high likelihood that injustice has resulted."[4]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Issuing A Written Order That Differed From Its Earlier Oral Order.

Jackson first contends that the superior court abused its discretion when the written orders it issued in March gave Von Gemmingen 90 days to recover her personal

---

[1] *Ogden v. Ogden*, 39 P.3d 513, 518 (Alaska 2001).

[2] *Inman v. Inman*, 67 P.3d 655, 658 (Alaska 2003).

[3] *Baker v. Ryan Air, Inc.*, 345 P.3d 101, 106 (Alaska 2015).

[4] *Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016) (quoting *D.J. v. P.C.*, 36 P.3d 663, 668 (Alaska 2001)).

property whereas, in Jackson's view, the 90-day period should have run from the time the court entered its oral findings and conclusions in February. Jackson argues that because Von Gemmingen did not recover her property within 90 days as measured from the earlier date, he "should have possession [of her property] by the court order."[5]

"All parts of an order are read together and are considered as a whole[,]" and the record and transcript of the oral ruling should be considered in determining the scope of a written order.[6] Substantial deviations between the oral and written rulings should be explained.[7] But "the court that entered the original order is in the best position to interpret its own order."[8]

---

[5] We recognize that this issue may be moot. With Jackson's reply brief, he submitted excerpt pages that included a writ of assistance, issued October 2, 2018, giving Von Gemmingen an additional five days to recover her personal property; this was months after the initial 90-day period had expired, whether calculated from February or March. But because the October order and related documents were never made a part of the record on appeal and because Von Gemmingen had no opportunity to address matters Jackson raised for the first time in his reply brief, we decide the issue on the basis of the actual record.

Jackson also argues that the starting date of the writ of assistance must be a live controversy because the trial court granted Von Gemmingen attorney's fees "based on [her argument that] she was unable to collect her belongings on or about June 2, 2018," which by Jackson's calculation was after the 90-day period had expired. Again, the post-appeal documents on which Jackson relies for his attorney's fees argument are not part of our record, but his excerpt pages indicate that the fees award was based on his failure to attend two successive show-cause hearings, not Von Gemmingen's inability to collect her belongings on any particular date.

[6]     *del Rosario v. Clare*, 378 P.3d 380, 384 (Alaska 2016).

[7]     *Ogden v. Ogden*, 39 P.3d 513, 518 (Alaska 2001).

[8]     *del Rosario*, 378 P.3d at 383.

We conclude that the court's oral remarks and its subsequent written orders regarding the 90-day time limit can easily be harmonized. The court's oral remarks can be read as describing the terms of the orders the court anticipated issuing later regarding property retrieval: "I'm going to issue as part of . . . these findings . . . an order that allows her access to the property for the next 90 days . . . . [And if necessary] I will also issue a writ of assistance . . . ." The court later restated, "And as I indicated, I'll issue an order for a writ of assistance *if Ms. Von Gemmingen wants that* relative to her personal property." (Emphasis added.)

It is true that the court's further elaboration sounded more definitive about starting the clock immediately: "If you don't get the personal property at 90 days somehow, . . . you forfeit it. He gets it all. So you got to get down there *in the next 90 days* or you lose it all; he gets it." (Emphasis added.) But reading the oral and later written orders together, as we are required to do,[9] and deferring to the judge as the best interpreter of his own words, as we are also required to do,[10] we readily conclude that the court was simply describing what would appear in the written orders. Indeed, the court's very next statement was a directive to Von Gemmingen's counsel "to prepare a decree of divorce, findings of fact and conclusions of law consistent with what I've said, [and] a writ of assistance." Von Gemmingen's counsel, as scribe, could reasonably assume that the 90-day term should appear in the proposed orders and the term would begin when the orders were issued.

Jackson also argues, briefly, that the court erred by omitting from the written order the "8 a.m. to 10 p.m." and two-day time limits it stated orally. But the issue is clearly moot. "A claim is moot if it is no longer a present, live controversy, and

---

[9]     *Id.* at 384.

[10]     *Id.* at 383.

the party bringing the action would not be entitled to relief, even if it prevails."[11] Regardless of whether the order's 90-day term commenced in February or March 2018, it expired long ago — in fact months before Jackson filed his opening brief on this appeal. Jackson does not explain how a ruling from this court on the logistical details of Von Gemmingen's property recovery could have any conceivable effect on the parties' rights going forward. We therefore decline to reach this argument.

B. **The Superior Court Did Not Plainly Err By Finding That Jackson Violated Corporate Law.**

In its oral decision, the superior court found that Jackson's purported sale of the two pieces of real property owned by Alaska Otter violated not only the June 2018 domestic relations protective order but also "the corporate documents in Alaska Otter which make . . . both parties equal owners, and Ms. Von Gemmingen not only did not consent to this sale, she didn't know about it until trial." These findings were repeated in the later written findings of fact and conclusions of law: "[T]he circumstances here are affected by what Mr. Jackson has done in selling both properties in violation of the court's order . . . and *in violation of corporate law*. He sold these properties without informing Ms. Von Gemmingen. She didn't know about this until trial." (Emphasis added.)

Jackson argues that the trial court erred by finding a violation of "corporate law" in the absence of "any corporate documents or bylaws on the record or in the oral decision." He contends that a judicial finding that he violated corporate law "has a serious potential for opening [him] to civil liability[,] . . . smears his character," and "will have longstanding consequences in any business endeavor that [he] takes on."

---

[11] *Fairbanks Fire Fighters Ass'n, Local 1324 v. City of Fairbanks*, 48 P.3d 1165, 1167 (Alaska 2002).

We note that Jackson provided the superior court with no rationale for his objection to the "violation of corporate law" language in the proposed findings and conclusions. "To preserve an issue for appeal, a party must clearly state the grounds for his objection 'so that the [superior] court may intelligently rule upon the objection.' "[12] Because Jackson failed to preserve this issue in the trial court, we review it for plain error.[13]

Notwithstanding Jackson's argument that the trial record lacked "any corporate documents or bylaws," the record does contain, as one of Von Gemmingen's trial exhibits, a page from the State Division of Corporations' website showing Alaska Otter's "AK Formed Date" of March 27, 2015 and showing Jackson and Von Gemmingen as its two directors, officers, and 50/50 owners. The same exhibit includes copies of Alaska Otter's Certificate of Incorporation, its Initial Biennial Report, and its August 2017 Certificate of Involuntary Dissolution/Revocation. More importantly, Jackson does not dispute any of the relevant facts: that the corporation exists, that he and Von Gemmingen were equal shareholders, that both served as the corporation's directors and officers, that the corporation owned the two pieces of real property at issue, and that Jackson sold the two pieces of property without Von Gemmingen's knowledge or consent.

The duties of corporate officers and directors, including the duty to act in good faith, are set out in statute.[14] "Directors of corporations are fiduciaries with respect to the corporation" and are required "to honestly and diligently direct the business of the

---

[12] *Davison v. State*, 282 P.3d 1262, 1267 (Alaska 2012) (alteration in original) (quoting *Williams v. State*, 629 P.2d 54, 62 (Alaska 1981)).

[13] *See Small v. Sayre*, 384 P.3d 785, 788 (Alaska 2016).

[14] AS 10.06.450(b); AS 10.06.483(e).

-8- *1746*

corporation."[15] A sale of "substantially all" of a corporation's property generally requires shareholder approval.[16] Jackson does not explain why his actions in selling the corporation's major assets without the knowledge and consent of his co-equal shareholder, officer, and director would *not* be a breach of these duties, and no unstated argument is apparent to us.[17] Because the court's findings of fact are unchallenged and sufficient to support a conclusion that Jackson violated his fiduciary duties, we see no plain error in the court's finding that Jackson violated "corporate law."

Finally, Jackson argues that the superior court's written finding that Jackson sold the properties "in violation of corporate law" substantially deviated without explanation from the court's oral decision, which stated that Jackson's sale was "in violation of the corporate documents in Alaska Otter which make . . . both parties equal owners." We see no substantive difference. The court's findings are easily harmonized and their import is clear: because Von Gemmingen was shown by the corporate documents to have equal rights in the corporation, Jackson owed her duties imposed by corporate law, duties which he violated. While the superior court's explanation for this finding was terse, Jackson does not persuade us that it is plainly erroneous.

---

[15]     *Bibo v. Jeffrey's Rest.*, 770 P.2d 290, 295 (Alaska 1989).

[16]     *See* AS 10.06.568-.570.

[17]     *See, e.g.*, *Carter v. Hoblit*, 755 P.2d 1084, 1086 (Alaska 1988) ("The fiduciary has a duty to fully disclose information which might affect the other person's rights and influence his action."); *see also In re Reliance Sec. Litig.*, 91 F. Supp. 2d 706, 732 (D. Del. 2000) (holding that allegations that "permit the inference that [directors] may have knowingly withheld material information from the Company's shareholders . . . may rise to a violation of the directors' duty of loyalty"); *Mueller v. Cedar Shore Resort, Inc.*, 643 N.W.2d 56, 67 (S.D. 2002) ("Hallmark behavior of [a breach of directors' duty of loyalty] includes the failure to disclose information, director or shareholder self-dealing, making fraudulent misrepresentations regarding past or future events, and surreptitious conduct or communications.").

## V. CONCLUSION

The superior court's findings of fact and conclusions of law and its challenged writ of assistance are AFFIRMED.