NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| THOMAS E. JORDAN, | ) |
| | ) Supreme Court No. S-18629 |
| Appellant, | ) |
| | ) Superior Court No. 3AN-17-11213 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| CHERYL A. JORDAN, | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 2058 – November 20, 2024 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Eric A. Aarseth, Judge.

Appearances: Rhonda F. Butterfield, Wyatt & Butterfield LLC, Anchorage, for Appellant. Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.   INTRODUCTION

In its original property distribution order in a divorce case, the superior court awarded the wife $175,000 to compensate for her disproportionately low future income and $182,781.88 to account for the further income disparity created by the husband's military disability pay. On the husband's first appeal from that order, we stayed the $182,781.88 award pending the appeal but did not stay the $175,000 award.

---

\*      Entered under Alaska Appellate Rule 214.

We ultimately disagreed with the superior court's calculation of the $175,000 award and ruled that the $182,781.88 award was an unlawful dollar-for-dollar offset to the military disability pay.

On remand, the superior court recalculated the $175,000 award and added a new equitable payment to the wife of $208,080, referring to the husband's military disability pay only as one factor in its consideration of the couple's relative economic situations. The court also ordered the husband to transfer amounts from retirement accounts that the original property distribution order had awarded to the wife but that the husband had been withholding pending our decision as to what was owed.

Months later the husband filed an Alaska Civil Rule 60(b) motion for relief from judgment, claiming that the court's orders on remand failed to subtract the $182,781.88 disability pay offset that we had disallowed on the first appeal and thus required him to pay twice for the same income disparity. The court denied the husband's motion, and he appealed.

We conclude that the superior court did not order duplicative payments or otherwise abuse its discretion in formulating a property distribution order on remand. We therefore affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

This case is best understood as having three phases: the initial superior court proceedings, the first appeal, and the superior court proceedings on remand.

### A. Initial Superior Court Proceedings

Cheryl Jordan filed for divorce from her husband Thomas Jordan in October 2017.[1] Following three days of trial, the superior court issued written findings of fact and conclusions of law. Underlying its analysis were several important factual

---

[1]     Because the parties use the same last name, we refer to them by their first names for clarity.

findings: that Thomas expected future lifetime employment income of about $800,000, compared to Cheryl's expected income of about $450,000; that Cheryl needed the couple's real property in Ketchikan as her residence and a rental property in Sitka to operate as a bed and breakfast, as she had done before the couple separated; and that Thomas wanted to remain in the marital home in Sitka.

The court attached to its order a property division table showing the values it gave to the various items of marital property and the person to whom they were allocated. The court also awarded Cheryl the family dogs and 37.64% of Thomas's "divisible military retirement pay" (half of the coverture fraction[2]). The court observed that an even division of the estate would likely be appropriate except for one consideration: "the husband's greater earning potential over the next four years." To address this perceived discrepancy and "[t]o ensure a fair and equitable division of property," the court made two additional awards. First, it awarded Cheryl "an additional $175,000" — half of the $350,000 "difference in income over their working lives." Second, while acknowledging that it did "not have jurisdiction to divide the husband's [military] disability pay," the court awarded Cheryl "an additional $182,781.88 from the marital estate" — a sum based on the coverture fraction of the Veterans Administration (VA) disability pay Thomas was projected to receive during his lifetime. The court wrote on the property table that the "[r]emaining marital estate [was] divided 50/50."

---

[2] "[T]he coverture fraction . . . is used to determine the portion of a retirement medical benefit (or any other retirement benefit) that should be counted as marital property and the portion that should be counted as separate property." *Gordon v. Gordon*, 425 P.3d 142, 147-48 (Alaska 2018). "[T]he numerator is 'the number of years worked during the period of coverture' and the denominator is 'the total number of years worked.' " *Wiegers v. Richards-Wiegers*, 420 P.3d 1180, 1186 (Alaska 2018) (quoting *Hansen v. Hansen*, 119 P.3d 1005, 1015 (Alaska 2005)).

Thomas moved for reconsideration on a number of grounds. Those grounds included points that he would successfully maintain on his first appeal to this court, including that the court had improperly awarded Cheryl part of his VA disability income. Also relevant for this second appeal was Thomas's argument that the court's valuations and allocations in the property table resulted in a 57/43 division in Cheryl's favor, not the 50/50 division the court had apparently intended. But the court, though reconsidering a few minor valuation errors, otherwise denied Thomas's motion, explaining that it had intended an uneven distribution, both because of Thomas's much greater income and because of the large mortgages on the two properties awarded to Cheryl. The court explained that its original order was "simply using the income calculations as a yardstick to help determine what [Cheryl] needs and what [Thomas] can afford."

Thomas filed an appeal, focused primarily on the awards to Cheryl based on his VA disability pay and future income. Several months later he asked the superior court to stay its orders regarding the allocation and distribution of his retirement accounts pending the outcome of the appeal. The superior court denied the stay, writing only, "An unequal division was fair and equitable. Plaintiff is unable to service the mortgages without additional cash."

While Thomas's appeal remained pending, Cheryl moved to compel him to transfer her share of certain Fidelity retirement accounts. Thomas asked this court to stay the transfer pending the outcome of the appeal. Meanwhile, opposing Cheryl's motion to compel in the superior court, Thomas urged the court to await our ruling on his motion to stay, arguing that "[p]reserving the funds listed on lines 275 and 276 of the spreadsheet [the Fidelity accounts at issue] is the only means by which he can preserve what will likely be awarded to him." The superior court denied Cheryl's motion to compel the transfer, explaining that "[i]f [Thomas's] motion [to stay before

the supreme court] is granted, he will not need to convey the funds listed on lines 275 and 276 of the spreadsheet."

We partially granted Thomas's motion to stay, noting his argument "that the superior court impermissibly divided [his] VA disability benefits, contrary to federal and state law." We determined that "[f]or purposes of this motion only, it appears there is a substantial likelihood [that Thomas] will succeed on the merits on this issue," and we therefore ordered that "the superior court's award [of $182,782] is stayed pending decision on appeal by the supreme court."

A few weeks later Cheryl filed a motion in the superior court to enforce the property distribution order, specifically with regard to funds held in certain Vanguard accounts. Distinguishing those funds from the subject of our stay, Cheryl argued:

> The $182,782 that the Alaska Supreme Court has stayed is separate from the Vanguard funds. [Thomas] still has $166,598 of funds awarded to [Cheryl] in two of his Fidelity accounts [lines 275 and 276 of the property distribution order] that were awarded to her. [Cheryl] also [has] Empower work-related retirement funds awarded to her that were valued at $455,049. She will leave more than enough of those funds in the retirement to cover the funds that are stayed by the Alaska Supreme Court.

Thomas agreed at least partly with Cheryl's explanation, describing the funds he thought were "subject to the stay on appeal" as including a total of $166,598 from the two accounts she identified plus "an additional $16,174 in funds awarded to [Cheryl] that cannot be distributed now because they are subject to the stay."

Cheryl replied that our order was ambiguous as to what funds were stayed, and that in light of this ambiguity the superior court should require Thomas to pay over to her all funds she had been awarded in its property distribution order, with the proviso "that she not spend $182,782 of these funds until the appeal issues are resolved." Cheryl's motion was ultimately mooted by our decision on Thomas's appeal.

## B. First Appeal

We decided Thomas's appeal in February 2021. We explained that a superior court dividing a marital estate could consider VA disability pay as it affected the parties' financial circumstances but could neither divide it nor directly offset it in the property division, and we disagreed with the superior court's treatment of the issue:

> The court referred to its use of the income calculations as a "yardstick," but by directly offsetting nondivisible disability pay "to the dollar and to the penny," the figure was clearly applied as a dollar for dollar distribution prohibited by *Howell. Howell v. Howell*, —— U.S. ——, 137 S. Ct. 1400, 1406, 197 L.Ed.2d 781 (2017) (preempting any situation in which "the amount [awarded to the spouse] mirrors the waived retirement pay, dollar for dollar"). When determining an equitable division, courts should avoid using figures equivalent to property that is not divisible, such as VA disability payments or Social Security benefits. Although these benefits may properly be considered in assessing a party's financial condition as a whole, dollar for dollar or any equivalent distribution is preempted by federal law. *Id.* We therefore reverse the superior court's $182,781.88 award to Cheryl from the marital estate that is the cash equivalent of a coverture fraction of a putative marital portion of Thomas's lifetime future VA disability benefits, and we remand the issue for renewed consideration.[3]

We also remanded the $175,000 award — based on the difference in the parties' projected future earnings — because of a 10-month error in the superior court's calculation of Thomas's remaining work life and for consideration of the impact of "income tax obligations" on both parties' future earnings.

---

**3** *Jordan v. Jordan*, 480 P.3d 626, 638 (Alaska 2021) (footnotes integrated into text).

### C. Superior Court Proceedings On Remand

The superior court thus had two principal tasks on remand: to recalculate the $175,000 award to Cheryl based on the parties' income discrepancy and to reconsider the basis for its $182,781.88 award to Cheryl offsetting Thomas's VA disability pay.

Regarding the first issue, Thomas argued that the difference between his and Cheryl's recalculated future income after taxes would be $104,693.70, and that Cheryl was entitled to half that: $52,346.85. Contending that he had already paid $175,000, he argued that "$122,653.15 needs to be shifted from [Cheryl's] side of the ledger to [his] side of the ledger." Cheryl's numbers were different: She argued that Thomas would earn $139,437.44 more than she would during their remaining work lives and that the superior court should "use this figure in fashioning an equitable division of the marital estate."

The superior court accepted Thomas's estimate of the earnings discrepancy, but rather than splitting that figure in half, as it had the first time, it adhered to an "overall division [that] was 53/47% in the plaintiff's favor."[4] This meant that Cheryl was "entitled to $55,487.66" instead of $175,000, leaving "$119,512.34 [that] need[ed] to be accounted for" in some other way.

Regarding the second issue — the VA disability pay offset — Thomas argued that Cheryl's financial condition was "very strong" and that "the entire $182,781.88 which this court previously awarded to [Cheryl] . . . should be restored to [Thomas], and placed on his side of the ledger." Cheryl countered that the property should still be divided in her favor considering the parties' relative financial conditions,

---

[4] The court later changed these percentages on reconsideration, noting that it had "inadvertently used a 53/47% overall property division calculation when a 57/43% division was contemplated by the court."

though without the dollar-for-dollar disability pay offset that we had found to violate federal law.

The superior court essentially proceeded as Cheryl suggested, simply noting the lifetime income Thomas would derive from his VA disability pay before moving on to contrast the parties' general financial situations. The court reasoned that "[t]he existence of the defendant's additional income, guaranteed for the remainder of his life[,] is a factor supporting the conclusion that the defendant is financially able to receive a lesser percentage of the marital estate so that the wife can receive a greater percentage of the estate." Recalculating the equitable distribution, the court first allocated $36,500 in increased property value and craft supplies that had not been accounted for earlier. The court then estimated Cheryl's debt load given the properties she had been assigned, deciding that it would total $208,080 over the course of the four years it would take for her to transition to living on a single income. The court awarded Cheryl this sum, plus the $55,487.66 representing a percentage of the recalculated difference in earning potential, plus $19,245 as her share of the previously unallocated amounts. Subtracting $175,000, as the amount "[s]he had already received" as compensation for the income differential, the court concluded that Thomas still owed her $107,812.66. The court's later adjustment to reflect the proper percentage split raised this amount to $132,823.28.

Because of continued disagreement over what remained to be paid, Cheryl filed another motion several months later to enforce the property distribution. She asked for not only the $132,823.28 just awarded (plus accumulated interest), but also the amounts contained in the Fidelity accounts Thomas had held back in reliance on our stay pending appeal, which she argued "were not the subject of the appeal." Cheryl calculated that Thomas now owed her a total of $335,736.83 (including interest). Thomas disputed Cheryl's figures and also denied that the amounts from the Fidelity accounts were owed separately, holding to his position that the accounts were simply

the source out of which the original $182,781.88 was to have been paid; in his view, Cheryl's demand for their transfer was therefore "double dip[ping]."

The superior court agreed with Cheryl's position, however, ruling that its "property distribution order after remand explicitly left in place the original property distribution order, to include the award to the wife from" the Fidelity accounts. As the superior court saw it, its order on remand addressed only (1) the calculation of Thomas's future income, (2) the $36,500 held in abeyance, and (3) the new "future financial support for [Cheryl] in the amount of $208,080.00" for debt service. Thomas was ordered to pay Cheryl $335,736.83 by mid-October 2022.

Thomas timely paid the amount ordered, but on December 1 — ten months after the superior court's order on remand — he moved for relief from judgment under Civil Rule 60(b), contending that he had identified "a major math mistake" in that and other post-remand orders. He argued that the two monetary awards made in the original property distribution order (for $175,000 and $182,781.88) constituted "$357,781.88 awarded to the Wife in the original spreadsheet." On remand, therefore, the court should have subtracted that sum from Cheryl's side of the ledger "before adding the new, recalculated amounts"; the superior court erred by subtracting only $175,000. Thomas argued that Cheryl should be required to reimburse him the $182,781.88 imbalance.

Cheryl disputed Thomas's interpretation of the original property distribution order. She explained that rather than awarding her $357,781.88 in the property distribution table itself, the superior court had split the property 50/50 and then added the $175,000 and $182,781.88 awards, "which were not awarded to her initially due to the appeal and the stay." In Cheryl's narrative, it was not until remand that the superior court "took the marital estate and divided it in [her favor] 57/43 rather than 50/50." Therefore, the effect of the superior court's order on remand was to take "the entire marital estate and ultimately divide[] it 57/43 in [Cheryl's] favor, rather than

50/50 plus $182,781," meaning that the court "was not required to take out $182,781 before dividing the marital estate."

The superior court denied Thomas's Rule 60(b) motion, writing that he had "not identified any mistake and misreads the Supreme Court's 2021 instructions on remand." Thomas appeals.

## III.   STANDARD OF REVIEW

"We will not disturb a trial court's ruling on a Rule 60(b) motion unless an abuse of discretion is demonstrated."[5]  Abuse of discretion can be found when a decision is arbitrary, capricious, manifestly unreasonable, or improperly motivated.[6]  A superior court's interpretation of its own order is also reviewed for abuse of discretion.[7] On the other hand, whether or not a trial court correctly followed our instructions on remand is a question of law reviewed de novo and answered in light of precedent, reason, and policy.[8]  But when a trial court is making its own equitable allocation of property, we review it only for abuse of discretion and will not overturn it unless it is "clearly unjust."[9]

## IV.   DISCUSSION

The superior court denied Thomas's Rule 60(b) motion on its merits. Cheryl contends that the motion was untimely and should have been denied for that reason. A court can grant an untimely Rule 60(b) motion if it decides that "the demands

---

**5**      *Fernandez v. Fernandez*, 358 P.3d 562, 565 (Alaska 2015) (quoting *Morris v. Morris*, 908 P.2d 425, 427 (Alaska 1995)).

**6**      *Christopher D. v. Krislyn D.*, 426 P.3d 1118, 1120-21 (Alaska 2018).

**7**      *del Rosario v. Clare*, 378 P.3d 380, 383-84 (Alaska 2016).

**8**      *Moeller-Prokosch v. Prokosch*, 99 P.3d 531, 534 (Alaska 2004).

**9**      *Hudson v. Hudson*, 532 P.3d 272, 279 (Alaska 2023).

of justice" require relaxation of the deadline.[10]  But because the court denied Thomas's motion, and because we can affirm that denial on the grounds the court cited, we do not need to decide whether the motion should instead have been denied as untimely.

A. **The Superior Court Did Not Require Thomas To Pay The Same Sum Twice To Make Up For The Income Discrepancy.**

Thomas argues that the superior court erred by failing to subtract $182,781.88 — the VA disability pay offset award — from the funds awarded to Cheryl on remand to compensate for the parties' future income disparity.  He argues that "[b]ecause the [trial] judge denied [Thomas's] Rule 60(b) motion, [Thomas] has paid the $182,781.88 twice:  once when the court ordered him to pay $208,080 in place of the $182,781.88; . . . then again when the court ordered him to pay the $166,598 [in the Fidelity accounts] that was held back pursuant to the Supreme Court stay."  But Thomas's characterization of the issue is mistaken.

Thomas in fact never paid the $182,781.88.  As he acknowledges, the transfer of any such sum to Cheryl was stayed pending his first appeal.  The superior court's order on remand made clear that the sum no longer represented a transferable sum of cash (if it ever had), but rather the value of Thomas's future VA disability pay simply as one consideration in achieving a fair and equitable property distribution.  The court's award of $208,080 served that equitable purpose by allowing Cheryl to service the debt on her two properties during a transitional period, but was otherwise unrelated to the $182,781.88 award.

Thomas's confusion regarding the Fidelity accounts is understandable but ultimately not a reason to disturb the superior court's order.  When Thomas moved for a stay pending his first appeal, he explicitly asked us to stay the "distribution of most

---

[10]    *BBFM Eng'rs, Inc. v. McDonald*, 530 P.3d 352, 357 (Alaska 2023) (quoting *Alaska Truck Transp., Inc. v. Berman Packing Co.*, 469 P.2d 697, 700 (Alaska 1970)).

of the liquid retirement accounts of the final judgment." When Cheryl tried to compel the transfer of two of those accounts while the stay was pending, the superior court responded that a stay from this court would mean that Thomas would not have to transfer "the funds listed on lines 275 and 276 of the spreadsheet" — the Fidelity accounts. Both Thomas and the superior court, therefore, seemed to believe at that time that the Fidelity accounts were in some way related to the challenged awards.

When we granted the stay, Thomas might have assumed that we agreed. Our order did not, however, mention any accounts in the property distribution; neither did our opinion. Thomas had been ordered to transfer the accounts to Cheryl in the original property distribution order. Our opinion did not, on its face, do anything to change that, nor did the superior court's orders on remand.

## B. The Superior Court's Property Distribution Orders On Remand Were Within Its Broad Discretion.

Our mandate to the superior court on remand was that it "reconsider its methodology for awarding Cheryl a portion of the marital estate compensating for future income disparity." That is what the court did. It "acknowledge[d] [Thomas's disability pay] as a factor in concluding that he has the financial means to provide [Cheryl] transitional support from married to single life," and as a measure of what Cheryl needed for that transition the court used her "debt load, as measured [on] January 1, 2019" (the approximate date of the divorce decree and original property distribution order). First recalculating the difference in the couple's future earned incomes, it found that Cheryl was entitled to $55,487.66 rather than the $175,000 it had originally awarded for that purpose, meaning that Cheryl had received $119,512.34 more than she was entitled to (presumably in value from the marital estate). It then adjusted this figure by first awarding her an additional $19,950 as her share of the relatively minor (and unchallenged) amounts not previously allocated for increased property values and craft supplies. The court then turned to what Cheryl would need to service the debt on the two properties she had been awarded: $208,080. The court summarized its

conclusions: "[Cheryl] is awarded $55,487.66, 208,880, [11] and $19,245 for a total of $282,812.66. She had already received $175,000; therefore, the total principal due [her] is $107,812.66." The court applied a 6% interest rate from the date of the original property distribution order, bringing the total due to $127,856.95.

This analysis aligns with our broad remand order. Although the court defined Cheryl's need in a way not addressed in its original property distribution order — by reference to her debt load — it was still operating within its discretion by refashioning the award as necessary to accommodate our instructions while also doing what it thought fairness and equity demanded.[12] And the court adequately explained its rationale.[13]

The court's order on remand did leave one key ambiguity: It did not address the amounts previously awarded to Cheryl from the Fidelity accounts. In response to Cheryl's later motion asking that the funds now be transferred to her, the superior court wrote that the status of these accounts was unaffected by its order after remand, which "explicitly left in place the original property distribution order." Although the court slightly overstated the clarity of its order after remand (which did

---

[11]     The court made a mistake in writing this figure, but it clearly used the correct number — $208,080 — in reaching a total.

[12]     *See Korn v. Korn*, 46 P.3d 1021, 1024 n.16 (Alaska 2002) (vacating order dividing marital property and remanding for further proceedings, noting that superior court "may, in its discretion, broaden the scope of the proceedings on remand" if it "determines after reconsidering the issues of rental value and interim support [addressed on appeal] that reconsideration of other issues or of the entire property decision might be warranted").

[13]     *Cf., e.g.*, *Hooper v. Hooper*, 188 P.3d 681, 691 (Alaska 2008) (vacating order for $3,000 in rehabilitative alimony and remanding for further findings where "the court did not explain how it calculated this amount, . . .what expenses and for what duration this amount would cover[, or] why an award of this amount was needed, given [the receiving spouse's] income and given the size of the marital estate, its unequal allocation, and the amount of marital property awarded [to] her").

not "explicitly" reaffirm the original property distribution order), there is no reason to interpret the order after remand as modifying the property distribution in any way other than as it expressly intended; in other words, the 2019 property distribution order — including its allocation of the funds in the Fidelity accounts — remained unchanged to the extent it was not explicitly modified.

Because the superior court's order on remand complied with the remand instructions, did not result in duplicative awards to Cheryl, and was otherwise well within the court's broad discretion, the court did not abuse its discretion by denying Thomas's Rule 60(b) motion for relief from judgment on its merits.[14]

## V.    CONCLUSION

We AFFIRM the superior court's denial of Thomas's Rule 60(b) motion.

---

[14]    Thomas also asks that we reverse the awards of attorney's fees and costs to Cheryl if we reverse the superior court's reconsidered property distribution on remand.  Because we affirm the superior court's denial of Thomas's Rule 60(b) motion, we do not need to address this issue further.