*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KADE WOODELL, | ) | |
| | ) | Supreme Court No. S-18740 |
| Appellant, | ) | |
| | ) | Alaska Workers' Compensation Appeals |
| v. | ) | Commission No. 22-012 |
| | ) | |
| ALASKA REGIONAL HOSPITAL and | ) | O P I N I O N |
| INDEMNITY INSURANCE | ) | |
| COMPANY OF NORTH AMERICA, | ) | No. 7785 – September 19, 2025 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Alaska Workers' Compensation Appeals Commission.

Appearances: Kade Woodell, pro se, Rogers, Arkansas, Appellant. Krista M. Schwarting, Griffin & Smith, Anchorage, for Appellees.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

A nurse sought workers' compensation for disability and medical care related to a disease he allegedly contracted at work. His employer, a hospital, disputed that the disease was work related. At a hearing the Alaska Workers' Compensation Board, applying a regulation governing "medical reports," 8 Alaska Administrative

Code (AAC) 45.052, ruled that the hospital had not timely sought to cross-examine the authors of medical reports that the nurse had submitted for the Board's consideration. Therefore, the Board ruled, the hospital had waived the opportunity for cross-examination. The Board decided that the nurse had contracted the disease at work and awarded him benefits.

On appeal the Alaska Workers' Compensation Appeals Commission issued a decision purporting to affirm the award of workers' compensation in light of the evidence presented. Yet it also concluded that the Board had erred in ruling that the hospital waived its right to cross-examine the authors of the medical reports. The Commission reasoned that the documents at issue in this case were not actually "medical reports" for purposes of 8 AAC 45.052 because they were not prepared in the ordinary course of business. The Commission therefore applied the Board's general regulation governing evidence, 8 AAC 45.120, which has different procedures for requesting cross-examination. Under this general rule, the Commission held the hospital's requests for cross-examination were timely. Accordingly, the Commission reasoned, the Board had violated the hospital's due process rights by admitting the documents. The Commission remanded to allow the hospital to cross-examine the doctors.

On remand a new Board panel decided it was necessary to hold a hearing de novo on all issues. It then reversed most of the factual findings the Board had made in prior proceedings and rejected the nurse's claim for benefits. The nurse appealed the second Board decision, and the Commission affirmed it in all respects.

We hold that the Commission erred in the first appeal by ruling that the documents in question were not "medical reports" governed by 8 AAC 45.052. In light of the regulation's text and the Board's longstanding interpretation, we conclude that the term "medical reports" is not limited to records prepared in the ordinary course of business. We therefore reverse the Commission's remand order and vacate subsequent decisions of the Board and Commission that followed from the erroneous remand order.

-2- **7785**

We remand for reinstatement of the 2020 compensation award and for any further proceedings on the claim.

## II. FACTS AND PROCEEDINGS

### A. Facts

Kade Woodell worked as a nurse at Alaska Regional Hospital in 2018. He alleges he contracted a persistent Clostridiodes difficile[1] infection (C. diff[2]) at work in September 2018 after caring for a patient with C. diff.

Woodell has a preexisting condition with gastrointestinal symptoms but began to have increased problems in late September 2018. When he consulted a doctor, the doctor could not identify the cause of Woodell's symptoms and referred him to a gastroenterologist. The gastroenterologist diagnosed possible gallbladder disease and recommended removal of the gallbladder; testing after removal showed the gallbladder was healthy.

In December 2018 Woodell's primary physician ordered a test for C. diff, which was positive. Woodell concluded this infection was likely related to his work at Alaska Regional. In January 2019 Woodell reported the disease in writing as an employment-related injury, alleging he had been exposed to the disease in September 2018 while caring for patients. Alaska Regional denied that Woodell's work exposures caused the onset of C. diff.

Woodell returned to Arkansas, where he lived before coming to Alaska, early in 2019. He had multiple treatments for C. diff, none of which seems to have resolved his symptoms.

---

[1] Clostridiodes difficile was formerly known as Clostridium difficile; it is a bacterium. *C. diff (Clostridiodes difficile)*, U.S. CENTERS FOR DISEASE CONTROL AND PREVENTION (Dec. 18, 2024), https://www.cdc.gov/c-diff/about/index.html.

[2] The record uses a number of short forms to refer to the infection resulting from this bacteria. We adopt C. diff to refer to the infection, but we retain the varied forms when we quote from the record.

Alaska Regional arranged an employer's medical evaluation (EME) with Dr. Emil Bardana in May 2019. Dr. Bardana listed multiple diagnoses, including "[p]robable *Clostridium* (Clostridiodes) *difficile* enterocolitis" based on the positive test results. At that time Dr. Bardana said he could not exclude Woodell's reported work exposure "as a possible cause for his infestation with *C. difficile*," but he also thought there were other ways Woodell might have been infected. Dr. Bardana was "unable to select [work exposure] over any of the other more likely alternatives for his infection."

Dr. Bardana filed an updated report after receiving a letter written by Jenny Mayo, an Alaska Regional employee. Mayo reported that she had identified four patients at the hospital who had positive C. diff tests during the relevant time period; she asserted that Woodell did not assist with these patients' care. Based on Mayo's letter, Dr. Bardana concluded that there was "no epidemiological or other data directly supporting" Woodell's claim that he contracted the infection at work.

### B. Proceedings

Alaska Regional filed a report of injury with the Board in January 2019. Alaska Regional filed a notice of controversion shortly afterwards, denying that the infection was employment related.

Woodell, representing himself, filed a written claim for benefits in February 2019. He filed a letter from Dr. John Price, his doctor in Arkansas, stating, "I believe it reasonable to conclude that my patient, Kade Woodell . . . contracted C.Diff after exposure in the workplace and have diagnosed his condition as a hospital-acquired infection." Alaska Regional filed this letter about a week later with a form required

under 8 AAC 45.052.[3]  Alaska Regional answered Woodell's claim by denying that his infection was employment related and raising a defense of an untimely injury report.[4]

An attorney entered an appearance on Woodell's behalf in March 2019. On March 19 both Woodell and Alaska Regional filed medical summary forms with the same two letters about Woodell's condition, one from Dr. John Gillis and one from Dr. Philip Cedeno.

### 1.     Board's decision on timely notice and petition for review

Woodell filed an Affidavit of Readiness for Hearing form on April 8, asking the Board to schedule a hearing about the timeliness of his notice of injury. Alaska Regional agreed to a hearing on this issue.

After hearing testimony, the Board decided that Woodell's claim was not barred.  Based on Woodell's testimony that he had been exposed at work and had reported the exposure to a charge nurse shortly after the exposure, the Board found that Woodell had been exposed to C. diff while working for Alaska Regional; it then relied on the letters from Dr. Price, Dr. Gillis, and Dr. Cedeno to find that Woodell developed a C. diff infection while working.  The Board noted that Alaska Regional had not produced as a witness the charge nurse to whom Woodell reported the exposure.

---

[3]      Under 8 AAC 45.052(a)-(b), both parties must file "medical reports" using a specific form provided by the Board.

[4]      Injured workers were required to report their injury to their employers in writing within 30 days under the laws in effect at that time.  Former AS 23.30.100(a)-(b) (2018).  Under AS 23.30.100(d)(1), a claim is not barred if the employer "had knowledge of the injury" and the Board determines that the employer "has not been prejudiced by failure to give notice."  The 30-day notice requirement can also be excused if the Board determines "that for some satisfactory reason notice could not be given."  AS 23.30.100(d)(2).

The Board stated that "[d]etermining the date of an injury that allegedly resulted from a pathogenic infection . . . is quite difficult."[5] It ruled that Woodell's claim was not barred due to untimely notice:

> [Alaska Regional] had actual knowledge of the September 21, 2018 exposure when [Woodell] reported it to the charge nurse one day after exposure, and [it] was not prejudiced by the lack of written notice as it had knowledge of all the information that a formal written claim would have contained . . . . [Alaska Regional] had actual knowledge about the exposure [and Woodell's] personal information and responsibilities . . . .

Alaska Regional petitioned for review of the notice decision. The Commission issued an order that "accept[ed]" the petition for review, remanded the matter to the Board "for findings of credibility" related to Alaska Regional's witness, and "retain[ed] jurisdiction." After the Board issued a decision reiterating that it found Woodell credible and Alaska Regional's witness not credible, the Commission issued an order discussing the merits of the petition and concluding, in relevant part, "[Alaska Regional's] Petition for Review is DENIED. The decisions and orders of the Board are AFFIRMED."

---

[5] Alaska Statute 23.30.395(24) defines "injury" as including "an occupational disease or infection that arises naturally out of the employment or that naturally or unavoidably results from an accidental injury." We adopted a test for an occupational disease that "arises naturally out of the employment" in *Aleutian Homes v. Fischer*, 418 P.2d 769, 777-78 (Alaska 1966). The Board has applied the *Aleutian Homes* test in some infectious disease cases, including COVID-19. *See Rapp v. Chugach Elec. Co.*, AWCB Dec. No. 23-0004, 2023 WL 341299, at *8 (Jan. 13, 2023) (COVID); *see also Denner v. Wesleyan Nursing Home*, AWCB Dec. No. 89-0109, 1989 WL 236276, at *6-8 (May 11, 1989) (pneumonia). We found nothing in the record indicating that the parties, the Board, or the Commission considered applying this test in Woodell's case. We therefore do not address whether the test from *Aleutian Homes* applies to this case.

### 2. Board's 2020 decision awarding benefits

In September 2019 Woodell reported continuing symptoms and another positive test for C. diff. Woodell filed an amended written claim that added a request for permanent total disability benefits. On November 19, 2019, Woodell filed a medical summary form with a letter from Dr. William Wigington, a gastroenterologist who had treated him. That same day Woodell filed an Affidavit of Readiness for Hearing. On November 26, Alaska Regional opposed setting a hearing because it needed to conduct more discovery. Alaska Regional filed a request to cross-examine Dr. Wigington several days later, on December 3. Woodell's attorney withdrew in February 2020.

The Board held a hearing on the merits of Woodell's claim in August 2020. The day before the hearing, Woodell emailed the Board copies of six letters from his doctors linking his C. diff to employment at Alaska Regional, contending that all six had previously been filed. At the hearing Alaska Regional asked the Board to exclude these letters, saying one had not previously been filed[6] and the others were "all subject to our request for cross-examination."[7] Alaska Regional argued that because Woodell had not made the doctors who wrote these letters available for cross-examination, the Board could not consider their letters when deciding the case. Woodell indicated he had no idea he was required to make the doctors available for cross-examination.

---

[6] The letter, dated February 28, 2019, was attached to a September 2019 email from Woodell to Board staff, so it was in the record but had not been filed with a medical summary form. Because we see no indication that the Board relied on this letter in its final decision, we do not address it further.

[7] The remaining five letters were (1) the February 18, 2019 letter from Dr. Price, (2) the letters from Dr. Cedeno and Dr. Gillis that had been filed in March 2019, (3) the letter from Dr. Wigington, and (4) a January 2020 letter from Dr. Philip Cedeno. We were unable to find any cross-examination request for the January 2020 letter from Dr. Cedeno, which Alaska Regional filed with a medical summary on July 9, 2020.

The Board ruled that Alaska Regional had waived its right to have the doctors present for cross-examination. The Board noted that Alaska Regional had filed requests for cross-examination related to the letters in February and March 2019, and one on December 3, 2019.[8] The Board ruled that these requests for cross-examination were not "valid" because they were not filed within ten days of Woodell's affidavit of readiness for hearing, as required by 8 AAC 45.052(c)(2); three of the requests were filed too early, and one was filed too late. Alaska Regional's attorney said she was "not waiving that point" and would "keep it for appeal."

Woodell expressed concern that Alaska Regional was trying to relitigate issues previously decided; in response, the Board chair said that relitigation of the notice issue was barred. Woodell attempted to read into the record prior rulings in the case, including the Board's finding that he had worked all day with a "C. diff-infected patient." Alaska Regional objected, and the Board told Woodell that he did not need "to reread the decisions that have been issued" because "[w]e already know about all those." Alaska Regional then called two witnesses whose testimony disputed whether Woodell was exposed to C. diff at work.

The Board's final written decision determined that Woodell's C. diff infection was employment related and that he was entitled to temporary total disability and medical benefits. The Board denied his other claims.

### 3. First Commission appeal (2021)

Alaska Regional appealed to the Commission, arguing that the Board improperly admitted the doctors' opinion letters over its objection. Alaska Regional argued for the first time that the letters were not subject to 8 AAC 45.052 but to 8 AAC

---

[8] The Board's finding is consistent with our review of the record. Alaska Regional filed a cross-examination request for the letter from Dr. Price on February 28, 2019; a cross-examination request for the 2019 letters from Dr. Cedeno and Dr. Gillis on March 18, 2019; and a cross-examination request for Dr. Wigington's letter on December 3, 2019.

45.120 because they were "not medical records within the hearsay exception." Under 8 AAC 45.120, Alaska Regional argued, its requests for cross-examination were timely. Alaska Regional also argued that its evidence rebutted the presumption that Woodell's claims were compensable.[9] Alaska Regional did not attempt to reprise its challenge to the Board's finding that Woodell timely reported his C. diff exposure. Woodell generally argued that the Board was right about the evidence and the presumption analysis.

The Commission issued a decision in 2021 remanding the matter to the Board. The decision is difficult to parse. The Commission began by reviewing the litigation to that point, stating that it had previously affirmed the Board's notice decision and "accepted" the facts found in that decision. The Commission recognized that "many of the same facts or evidence are necessary to determine whether [Woodell] gave timely notice . . . and whether his work at the hospital was the source of his C-Diff diagnosis." It observed that the law of the case doctrine "might apply to the Board's finding that Mr. Woodell contracted C-Diff while working for the hospital," that Woodell tried to raise the issue before the Board, and that the doctrine "would appear to be applicable, thus, entitling him to the benefits awarded by the Board." It nonetheless declined to apply the law of the case because neither party raised the issue in the appeal.

The Commission then considered whether substantial evidence in the record supported the Board's decision awarding benefits to Woodell. Alaska Regional argued that the Board had erroneously ruled some of its witnesses' testimony inadmissible. The Commission did not directly address these evidentiary arguments

---

[9]     *See Huit v. Ashwater Burns, Inc.*, 372 P.3d 904, 906-07 (Alaska 2016) (summarizing three-step presumption-based analysis for determining whether disability or need for medical treatment is compensable).

but concluded, after performing its own presumption analysis, that it "must affirm the Board's award of benefits" to Woodell.

Finally, the Commission considered Alaska Regional's challenge to the admission of the opinion letters written by Woodell's doctors. The Commission agreed with Alaska Regional that the timeliness of its request to cross-examine the doctors was governed by 8 AAC 45.120, rather than 8 AAC 45.052:

> [W]e have two regulations . . . dealing with requests for cross-examination. One refers specifically to medical reports which may be admitted in spite of a request for cross-examination precisely because they are kept in the ordinary course of business and may be admitted as a hearsay exception. The other regulation pertains to documents whose credibility and competence may be challenged through cross-examination. The regulation at 8 AAC 45.120 governs the right to cross-examine these authors.

The Commission stated that the Board's failure to allow Alaska Regional to cross-examine the doctors was "a violation of [Alaska Regional's] due process rights." The Commission did not state that it was vacating or reversing the award of benefits to Woodell (which it had earlier stated it "must affirm"), but ordered a remand "to afford [Alaska Regional] its due process rights to cross-examine the authors of the opinion letters admitted by the Board."

### 4. Board's decision on remand denying benefits (2022)

On remand, Woodell informed the Board in April 2022 that he was unable to afford the costs of producing his doctors for cross-examination.[10]

---

**10**    The Board has interpreted our precedent as requiring the party whose medical witness is subject to a cross-examination request to pay the costs of producing the witness. *See Frazier v. H.C. Price/CIRI Constr. JV*, 794 P.2d 103, 106 (Alaska 1990) (Matthews, C.J., concurring) (summarizing Board's view that *Com. Union Cos. v. Smallwood*, 550 P.2d 1261 (Alaska 1976), required placing cost of producing witness for cross-examination on party seeking to introduce witness's written report for Board's

The parties disagreed about the scope of the Commission's remand and its effect on other parts of the Board's 2020 decision. Woodell argued that the remand to allow cross-examination of his doctors should not affect the benefits award because the Board's finding that he was exposed to C. diff at work was based on the its assessment of his credibility and the credibility of Alaska Regional's witnesses. Alaska Regional contended that the Board's admission of the letters over its objection so tainted the original proceedings that a hearing de novo on all issues was required. The Board resolved the dispute only at the start of the final hearing, when it announced that the hearing would be de novo.

After the hearing, the Board — a different panel than the one that previously decided Woodell's claims — issued a second decision on the merits. In light of the Commission's decision that 8 AAC 45.120 applied to opinion letters by Woodell's doctors, the Board determined that Alaska Regional had timely invoked its right to cross-examination. It also decided that the letters were hearsay and not admissible as any exception to the hearsay rule. Therefore, it declined to consider them. Based on the Commission's ruling that the 2020 decision had violated Alaska Regional's due process rights, the Board decided that the law of the case did not apply to any of the factual findings made in that decision.

Accordingly, the Board reversed most of the findings favorable to Woodell that it previously made in 2019 and 2020. For example, in 2019 and 2020 the Board found by a preponderance of the evidence that Woodell "worked all day with a C-Diff infected patient without 'personal protective equipment.' " In 2022 the Board

consideration). If a timely request to cross-examine a document's author has been filed and the author has not been produced for cross-examination, the Board will, upon objection, not consider the document. *See, e.g.*, *Weaver v. ASRC Fed. Holding Co.*, AWCB Dec. No. 17-0124, 2017 WL 5052953, at *29-30 (Oct. 27, 2017) (excluding written report by employer's medical expert).

stated only that Woodell testified to these facts, without acknowledging its prior findings that his testimony was credible.

The Board ultimately denied all of Woodell's claims on the merits. It gave "great weight" to the opinion of Alaska Regional's new EME doctor, who questioned whether Woodell had an active C. diff infection (as opposed to being a carrier).

### 5. Second Commission appeal (2023)

Woodell appealed to the Commission. He contended that the Board violated his due process rights by not announcing until the merits hearing was in progress whether the hearing would address all issues de novo. He asked the Commission to clarify whether its remand in 2021 was intended "to completely overrule every Board decision, credibility determination, and finding of fact." He pointed out that Alaska Regional had changed its position about his condition, contesting facts during the second hearing that it had previously conceded. Woodell sought reinstatement of the 2020 award of benefits.

The Commission upheld the Board's decision to hold a hearing de novo, but did not otherwise address Woodell's arguments about the impropriety of the Board's and Alaska Regional's approach to the proceedings. The Commission ultimately affirmed the Board's decision denying benefits.

Woodell appeals.

## III. STANDARD OF REVIEW

"In an appeal from the Commission, we review the Commission's decision and not the Board's."[11] We review de novo whether a litigant was denied due process.[12] We review the Commission's interpretation of its own order for abuse of

---

[11] *Mitchell v. United Parcel Serv.*, 498 P.3d 1029, 1039 (Alaska 2021) (citing *Alaska Airlines, Inc. v. Darrow*, 403 P.3d 1116, 1121 (Alaska 2017)).

[12] *AT&T Alascom v. Orchitt*, 161 P.3d 1232, 1239 (Alaska 2007).

-12- **7785**

discretion.[13]  "A decision constitutes abuse of discretion if it is arbitrary, capricious, manifestly unreasonable, or . . . stems from an improper motive."[14]

We independently review the Commission's conclusions about substantial evidence supporting the Board's decision by directly reviewing the Board's decision; we review the Commission's legal conclusions about the Board's legal or discretionary rulings by independently assessing the Board's rulings and applying the applicable standard of review.[15]

A key issue in this appeal is the interpretation of regulations adopted by the Board to govern the admission of written evidence.  In this matter, the Commission disagreed with the Board's interpretation of those regulations.  We have not previously discussed the standard of review we apply to the Commission's interpretation of a Board regulation.  As explained above, our consistent approach is to assess the Commission's legal conclusions about the Board's rulings by independently applying the applicable standard of review to the Board's ruling and the record.  Our general rule when reviewing an agency's interpretation of its own regulations is to apply the reasonable basis standard.[16]  Therefore, we must determine here whether the Board's

---

[13]     *See del Rosario v. Clare*, 378 P.3d 380, 383-84 (Alaska 2016) (using abuse of discretion for review of superior court's interpretation of own order).

[14]     *Id.* at 383 (alteration in original) (quoting *Gunn v. Gunn*, 367 P.3d 1146, 1150 (Alaska 2016)) (internal quotation marks omitted).

[15]     *Smith v. CSK Auto, Inc.*, 204 P.3d 1001, 1007 (Alaska 2009) ("Because the Commission's decision is the final administrative action in a workers' compensation case, we independently review the Commission's legal conclusion that the Board's factual findings were supported by substantial evidence.  This necessarily requires us to independently review the record and the Board's factual findings.  When we review the Commission's legal conclusions about the Board's exercise of discretion or legal rulings, we also independently assess the Board's rulings and in so doing apply the appropriate standard of review.").

[16]     *Garner v. State, Dep't of Health & Soc. Servs., Div. of Med. Assistance*, 63 P.3d 264, 267 (Alaska 2003).

interpretation of 8 AAC 45.052, its evidentiary regulation about "medical reports," had a reasonable basis. We review the Board's discretionary actions, including its application of a regulation to the facts of a case[17] and its admission of evidence,[18] for abuse of discretion.

## IV. DISCUSSION

The parties' briefing on appeal focuses on the Board's decision to hold a hearing de novo after the Commission decided that the Board mistakenly ruled that Alaska Regional waived its right to cross-examine the doctors who wrote letters opining on Woodell's medical condition. The Commission's decision remanding for cross-examination was based on its interpretation of regulations adopted by the Board, 8 AAC 45.052 and 8 AAC 45.120. Yet neither party addressed the regulations in their briefing. We therefore requested supplemental briefing on two issues: whether the Commission erred when it interpreted the Board's regulations about cross-examination and, if it did, what the effect of such an error would be on the proceedings on remand from that Commission decision. Because these issues are dispositive in this appeal, we now address them, after first discussing Alaska Regional's argument that the dispute over interpretation of the regulations is not properly before us.

### A. The Commission's Decision In The First Appeal Is Properly Before Us.

A threshold question is whether we may review the decision the Commission made in 2021, in the first appeal to it. Alaska Regional, in its supplemental brief, argues that we cannot review that decision because Woodell "did not appeal" it to us when he had the chance, so it "has been the law of the case since the deadline to appeal . . . passed in 2021." The argument lacks merit. Woodell never had a right to appeal that decision to us because the decision was not a final appealable order.

---

[17]    *Jespersen v. Tri-City Air*, 547 P.3d 1042, 1051 (Alaska 2024).

[18]    *Apone v. Fred Meyer, Inc.*, 226 P.3d 1021, 1026 (Alaska 2010).

As a general rule, a party has a right to appeal only a final judgment.[19]  A party has no right to appeal a nonfinal order;[20] the party may only seek interlocutory review, which is subject to our discretion and rarely granted.[21]  When the superior court acts as an intermediate appellate court in either administrative or district court appeals, we have decided that superior court decisions remanding the matter to the agency or district court for further proceedings are not final for purposes of our appellate review.[22]

We apply the same rule of finality to decisions of the Commission in workers' compensation appeals.  Our jurisdiction to hear appeals from the Commission is codified in AS 23.30.129.  The Commission was created as a substitute for superior court review of Board decisions, and we have interpreted the legislation creating the Commission as preserving the same procedural rights of review available in superior court appeals.[23]  Accordingly, in *Huit v. Ashwater Burns, Inc.* we held that when the Commission remands a workers' compensation matter to the Board for further proceedings, the Commission's decision is not a final appealable decision under AS 23.30.129, just as a superior court decision remanding a case to an agency is not a final appealable order.[24]

---

[19]     Alaska R. App. P. 202 ("An appeal may be taken to the supreme court from a final judgment entered by the superior court . . . or from a final decision entered by the Alaska Workers' Compensation Appeals Commission . . . ."); *cf. City of N. Pole v. Zabek*, 934 P.2d 1292, 1295 (Alaska 1997) ("We lack appellate jurisdiction when a superior court has not issued a final judgment.").

[20]     *Zabek*, 934 P.2d at 1296 ("Review of a non-appealable order or decision is not a matter of right . . . .").

[21]     *Id.*; Alaska R. App. P. 402.

[22]     *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 629 (Alaska 1979), *disavowed on other grounds by State v. Alex*, 646 P.2d 203, 208 n.4 (Alaska 1982).

[23]     *Monzulla v. Voorhees Concrete Cutting*, 254 P.3d 341, 347 (Alaska 2011).

[24]     372 P.3d 904, 912-16 (Alaska 2016).

In this case the Commission made two decisions that were not final appealable orders. First, the Commission issued an order on Alaska Regional's petition for review of the Board's decision that Woodell's claim was timely. Second, the Commission issued a decision when Alaska Regional appealed the Board's award of benefits. This second decision remanded the matter to the Board to allow cross-examination of Woodell's doctors, so it was not final under the rule announced in *Huit*.[25] Because Woodell had no right to appeal the Commission's 2021 ruling at that time, the law of the case does not preclude us from reviewing it now.

**B.     The Board's Ruling That Alaska Regional Waived Cross-Examination Of Woodell's Doctors Was A Reasonable Interpretation Of Its Regulation, So It Was Error To Reverse That Decision.**

A key issue underlying this appeal is whether the Commission correctly reversed the Board's ruling, based on 8 AAC 45.052, that Alaska Regional waived its opportunity to cross-examine the doctors who had opined on Woodell's medical condition. The second Board panel relied on the Commission's decision to hold a hearing de novo on all issues, which then led the Board to deny Woodell the compensation it had previously awarded him. As noted above, our task is to determine whether the initial Board panel's interpretation of this regulation was reasonable. To do so, we examine the history, text, and practice surrounding the Board's regulations governing the presentation of documentary evidence.[26]

---

[25]     *Id.* at 914 ("[W]hile the Commission may complete its decision-making process in cases like this one, when it remands the case to the Board without retaining jurisdiction, the entire administrative decision-making process is not complete if the remand permits further Board action that could change the case's outcome." (footnote omitted)).

[26]     *See City of Valdez v. State*, 372 P.3d 240, 246 (Alaska 2016) ("We will adopt 'the rule of law that is most persuasive in light of precedent, reason, and policy, but in doing so we give due deliberative weight "to what the agency has done, especially where the agency interpretation is longstanding." ' " (quoting *Heller v. State, Dep't of Revenue*, 314 P.3d 69, 73 (Alaska 2013))).

### 1. History and text of the relevant regulations

The Board has a longstanding preference that medical evidence be "in the form of written reports."[27] When "a party in interest" files "a claim or other pleading," the Alaska Workers' Compensation Act directs all parties to file the "reports of all physicians relating to the proceedings" and imposes a continuing duty "to file and serve all the reports during the pendency of the proceeding."[28]

We recognized in *Employers Commercial Union Insurance Group v. Schoen* that the Board's preference for written medical evidence "serves a legitimate purpose."[29] But in light of statutory language giving parties the right to cross-examine witnesses, and the absence at that time of any written process stating when this right would be waived, we held that parties needed to be given an opportunity to cross-examine the authors of written medical evidence.[30] We revisited these issues in *Commercial Union Cos. v. Smallwood*, where we held that the employer had not waived its right to cross-examine two doctors.[31] In *Smallwood* we "strongly recommend[ed] that the Board adopt procedures . . . relating to medical reports and the right of cross-examination."[32]

---

[27]    8 AAC 45.120(k); former 8 AAC 45.080(c), repealed 1983. According to one annotation, former 8 AAC 45.080 was "[i]n effect before 7/28/59." 8 AAC Register 45 (Apr. 1973).

[28]    AS 23.30.095(h).

[29]    519 P.2d 819, 822 (Alaska 1974).

[30]    *Id.* at 823-24.

[31]    550 P.2d 1261, 1263-64 (Alaska 1976).

[32]    *Id.* at 1267. In *Schoen* we suggested a rule similar to the Board's rule about affidavits or one akin to a Social Security regulation, both of which allowed the adjudicator to determine whether a litigant had preserved or waived his right to cross-examination. *Schoen*, 519 P.2d at 822-23, 823 n.9.

The Board acted in response to *Smallwood* and adopted regulations,[33] which it has modified over the years,[34] that set out specific processes to request cross-examination. A regulation titled "[m]edical summary," 8 AAC 45.052, contains detailed instructions about requesting cross-examination of medical reports' authors.[35] Under 8 AAC 45.052(c)(5), a party that fails to follow the procedures and deadlines for requesting to cross-examine authors of medical reports waives the right to do so.

The timing of requests for cross-examination in 8 AAC 45.052 is tied to hearing requests. "If the party filing an affidavit of readiness for hearing[36] wants the opportunity to cross-examine the author of a medical report listed on the medical summaries that have been filed," that party must file with the Board a request for cross-examination "together with the affidavit of readiness for hearing."[37] A party served with a hearing request must file a request for cross-examination of "the author of a medical report listed on the medical summaries filed as of the date of service" of the hearing request "within 10 days after service of the affidavit of readiness for hearing."[38] The Board's Affidavit of Readiness for Hearing form has instructions that repeat the language of 8 AAC 45.052, warning those completing the form that they "must comply with" a requirement that they "[a]ttach a 'Request for Cross-Examination' if [they] wish to cross-examine the authors of any medical reports listed on any party's 'Medical

---

[33]   8 AAC Register 86 (July 1983) (adopting 8 AAC 45.052).

[34]   8 AAC Register 100 (Jan. 1987) (amending 8 AAC 45.052); 8 AAC Register 113 (Apr. 1990) (same).

[35]   8 AAC 45.052(c).

[36]   Under AS 23.30.110(c), "the party seeking a hearing" must file an affidavit with specific information when requesting a hearing. The Board has a form affidavit of readiness for hearing. *See* 8 AAC 45.070(b).

[37]   8 AAC 45.052(c)(1).

[38]   8 AAC 45.052(c)(2).

Summary' to date."[39]  Separate deadlines apply to cross-examination requests related to medical summaries filed after a hearing request.[40]

It is important to note that the waiver rule functions primarily to allocate the cost of witness appearance, rather than to preclude witness testimony.  The Board allocates the cost of presenting a witness for a hearing to the party calling that witness.[41] When a party invokes its right to cross-examine the author of a written medical report, the person seeking admission of the medical report must pay the cost of making the author available to be cross-examined; otherwise, the report is excluded.[42]  But 8 AAC 45.052 does not strictly bar a party from questioning a witness if it has failed to timely request cross-examination.  That party may still call the medical report's author as a witness at a hearing, so long as that party bears the cost.[43]

There is a separate regulation, 8 AAC 45.120 (entitled "[e]vidence"), that governs documentary evidence more generally.  This regulation allows the Board to

---

[39]    Alaska Dep't of Lab. & Workforce Dev., Affidavit of Readiness for Hearing, Form 07-6107 (Rev 04/2011), https://labor.alaska.gov/wc/forms/wc6107.pdf.

[40]    8 AAC 45.052(c)(3).

[41]    *See Frazier v. H.C. Price/CIRI Constr. JV*, 794 P.2d 103, 106 (Alaska 1990) (Matthews, C.J., concurring) (summarizing Board position that *Smallwood* required shifting cost of producing witness to party seeking to introduce document); *id.* at 104 n.2 (majority opinion) (expressing "no view" on issue); *see also Leigh v. Alaska Child.'s Serv.*, AWCB Dec. No. 20-0071, 2020 WL 4929661, at *39-40 (Aug. 18, 2020) (explaining rules related to cost-shifting for depositions and observing that employer had not shifted cost of producing testimony because it did not file cross-examination request after employee filed affidavit of readiness for hearing).

[42]    *See, e.g.*, *Weaver v. ASRC Fed. Holding Co.*, AWCB Dec. No. 17-0124, 2017 WL 5052953, at *29-30 (Oct. 27, 2017) (excluding written EME report); *Geister v. Kids Corps, Inc.*, AWCAC Dec. No. 045, at 4, 10-19 (June 6, 2007), https://labor.alaska.gov/WCcomm/memos-finals/M_07-045.pdf (affirming, with explanation, the Board's exclusion of medical reports when author refused to be deposed).

[43]    8 AAC 45.052(c)(5)(B).

rely on any document, properly served, that is in the Board's possession "20 or more days before hearing . . . unless a written request for an opportunity to cross-examine the document's author" is filed and served "at least 10 days before the hearing."[44] Under 8 AAC 45.120(h), the Board may rely on the documents regardless of whether cross-examination is requested if (1) the document is admissible "under a hearsay exception of the Alaska Rules of Evidence," (2) "the document is not hearsay under the Alaska Rules of Evidence," or (3) the document is a second independent medical evaluation (SIME) report.[45]

Notably, 8 AAC 45.120(f) exempts medical reports from its rule about cross-examination: "The right to request cross-examination specified in this subsection does not apply to medical reports filed in accordance with 8 AAC 45.052; a cross-examination request for the author of a medical report must be made in accordance with 8 AAC 45.052."

To illustrate the difference in deadlines between these two regulations, we use the facts of this case. If the doctors' opinion letters were medical reports subject to 8 AAC 45.052, Alaska Regional had to file cross-examination requests related to all four documents between November 19, 2019, the date Woodell filed an affidavit of readiness for hearing, and December 2, 2019, 13 days later.[46] But if these letters were not medical reports, and were therefore subject to 8 AAC 45.120, Alaska Regional could file its cross-examination requests at any time up until ten days before the hearing in August 2020.

---

[44]     8 AAC 45.120(f).

[45]     8 AAC 45.120(h).

[46]     Under 8 AAC 45.060, three days are added to deadlines for service by mail.

## 2. The Board's and Commission's conflicting decisions

By applying 8 AAC 45.052 in its first merits decision, the Board implicitly determined that the letters submitted by Woodell's doctors were "medical reports" governed by that regulation.[47] Because Alaska Regional did not file requests for cross-examination within the timelines described in 8 AAC 45.052(c) — between November 19, 2019 and December 2, 2019 — the Board ruled that Alaska Regional had waived its right to cross-examine the doctors. As a result, if Alaska Regional had wanted to question Woodell's doctors about their opinions, it was Alaska Regional's burden to arrange for their participation. It did not, so it lost the opportunity to question them.

The Commission, by contrast, determined that the letters were not "medical reports" for purposes of 8 AAC 45.052. It interpreted the phrase "medical reports" to mean only those documents prepared in the ordinary course of medical practice, which are admissible under the hearsay exception for business records.[48] Based on this reasoning, the Commission concluded that the letters at issue were subject to the general evidence rules established in 8 AAC 45.120, which requires only that the cross-examination request be filed at least ten days before a hearing.[49] Under that rule, Alaska Regional's cross-examination requests were timely because they were filed more than ten days before the August 2020 hearing. Therefore, the Commission concluded, Alaska Regional had been wrongly denied its right to cross-examine the doctors.

---

[47] Alaska Regional did not argue at the first merits hearing that 8 AAC 45.120 applied rather than 8 AAC 45.052, so the Board did not have the opportunity to evaluate the legal argument.

[48] *See* Alaska R. Evid. 803(6) cmt.

[49] 8 AAC 45.120(f).

### 3.     Whether the Board's interpretation was reasonable

We conclude that the Board's interpretation of these regulations is reasonable.    Indeed, the Board's interpretation is more persuasive than the Commission's in light of the regulations' text and their long history of application.

We review the Board's "interpretation of its own regulation using the reasonable basis standard."[50]   Under this standard, we "defer[] to the interpretation unless it is plainly erroneous or inconsistent with the regulation."[51]   "We give more deference to agency interpretations that are longstanding and continuous."[52]   Our review of the Board's "application of its own regulations to the facts is limited to whether [its] decision was arbitrary, unreasonable, or an abuse of discretion."[53]

The Board's interpretation of the phrase "medical reports" to include written medical opinions prepared for litigation is consistent with the ordinary meaning of that phrase.   The term "report" can have several meanings, including "[a] usu[ally] detailed account,"[54] "[a] spoken or written account of an event, usually presented in detail,"[55] or "an account or statement describing in detail an event, situation, or the like,

---

[50]      *Weaver v. ASRC Fed. Holding Co.*, 464 P.3d 1242, 1257 (Alaska 2020).

[51]      *Lauth v. State*, 12 P.3d 181, 184 (Alaska 2000) (quoting *Bd. of Trade, Inc. v. State, Dep't of Labor, Wage & Hour Admin.*, 968 P.2d 86, 89 (Alaska 1998)) (internal quotation marks omitted).

[52]      *Davis Wright Tremaine LLP v. State, Dep't of Admin.*, 324 P.3d 293, 299 (Alaska 2014) (quoting *Marathon Oil Co. v. State, Dep't of Nat. Res.*, 254 P.3d 1078, 1082 (Alaska 2011)) (internal quotation marks omitted).

[53]      *Griffiths v. Andy's Body & Frame, Inc.*, 165 P.3d 619, 623 (Alaska 2007) (quoting *Hodges v. Alaska Constructors, Inc.*, 957 P.2d 957, 960 (Alaska 1998)).

[54]      *Report*, WEBSTER'S II NEW COLLEGE DICTIONARY (3d ed. 2005).

[55]      *Report*, THE AMERICAN HERITAGE DICTIONARY, (5th ed. 2022), https://www.ahdictionary.com/word/search.html?q=report.

usually as a result of observation, inquiry, etc."[56]  These definitions encompass a wide range of medical documents, including both documents that fall within a hearsay exception, like hospital notes or imaging reports, and those that do not, such as reports prepared for litigation by parties' doctors.

The Board's interpretation also appears to be consistent with the statutory text and the way we have applied it.   The Act requires the parties to file the "reports of all physicians" when a claim is filed and imposes on them a continuing duty to file these "reports" throughout the case.[57]  In *Frazier v. H.C. Price/CIRI Construction JV* we described this statute as applying to "written medical reports," and the report in that case was a report prepared for litigation by the employer's chosen physician.[58]  The Commission's interpretation of "medical reports" as including only documents "kept in the ordinary course of business" is both narrower than the ordinary meaning of "report" and inconsistent with our understanding in *Frazier* that the report of an employer's medical expert is a "medical report."[59]

Moreover, the Commission's interpretation of "medical report" to mean only medical documents that satisfy a hearsay exception seems to render a portion of 8 AAC 45.052 superfluous.  Subsection (c)(4) of 8 AAC 45.052 provides that the Board will not rely on a medical report filed less than 20 days before a hearing unless the medical report "is admissible under a hearsay exception of the Alaska Rules of Evidence" or the parties waive the right to cross-examination.  If "medical reports" for

---

[56]     *Report*, DICTIONARY.COM,   https://www.dictionary.com/browse/report (last visited May 22, 2025).

[57]     AS 23.30.095(h).  The report of a SIME doctor, a physician chosen by the Board to prepare a report, is subject to a different filing requirement.  *See* AS 23.30.095(k) (requiring SIME report to be furnished to Board within 14 days after examination).

[58]     794 P.2d 103, 104 (Alaska 1990).

[59]     *Id.* at 104, 106.

purposes of 8 AAC 45.052 means only medical documents admissible under a hearsay exception, then the (c)(4) exception is superfluous because all "medical reports" will meet the exception. But if the term "medical reports" is interpreted more broadly to include both medical documents that satisfy a hearsay exception and reports prepared for litigation, then the exception in (c)(4) has meaning. Therefore, the Board's interpretation is more reasonable because it gives effect to all portions of the regulation.[60]

The Commission's narrow interpretation of "medical report" would likely not include the medical reports discussed in *Commercial Union Cos. v. Smallwood*,[61] the case that prompted the Board to write cross-examination regulations.[62] The medical reports described in *Smallwood* set out a causation chain tying Smallwood's employment, which imposed a restricted diet, to his accelerated hypertension and kidney failure; nothing suggests that they were prepared in the ordinary course of business.[63] This point also supports the Board's interpretation of "medical reports" as including opinion letters written for litigation.

---

[60] *See Tea ex rel. A.T.*, 278 P.3d 1262, 1265 (Alaska 2012) ("When a regulation's interpretation is challenged, we apply the same standards that we apply to statutory interpretation."); *Mun. of Anchorage v. Suzuki*, 41 P.3d 147, 151 (Alaska 2002) ("We presume that every word in the statute was intentionally included, and must be given some effect.").

[61] 550 P.2d 1261 (Alaska 1976).

[62] *See Geister v. Kid's Corps, Inc.*, AWCAC Dec. No. 045, at 12 (June 6, 2007), https://labor.alaska.gov/WCcomm/memos-finals/M_07-045.pdf ("The medical summary and request for cross-examination process set out in 8 AAC 45.052 was developed in response to the Alaska Supreme Court's decision in *Commercial Union Cos. v. Smallwood*.").

[63] *Smallwood*, 550 P.2d at 1262-63.

We give more deference to an agency interpretation that is "longstanding and continuous."[64] The Board's forms, some of which have been in use for over 30 years,[65] suggest that the Board has consistently used the term "medical reports" broadly, supporting the reasonableness of the Board's interpretation of its regulation at Woodell's first merits hearing.

The use of a specific Board form is mandated by 8 AAC 45.052(a). That regulation requires that medical reports be filed with a "medical summary on form 07-6103."[66] The medical summary form currently in use sets out a number of codes to designate the type of medical report, including chart notes, hospital records, X-ray reports, employer independent medical evaluations, and SIMEs.[67] Some types of medical reports, such as chart notes or hospital records, would likely be admissible over a hearsay objection based on our precedents.[68] But other documents, like employer medical evaluations, are prepared for litigation and so, like the doctors' letters here,

---

[64] *Premera Blue Cross v. State, Dep't of Com., Cmty. & Econ. Dev., Div. of Ins.*, 171 P.3d 1110, 1119 (Alaska 2007).

[65] *See* Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (9/88), *in* Alaska Dep't of Lab., Alaska Workers' Comp. Manual; Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (1/94), https://labor.alaska.gov/wc/forms/wc6174.pdf.

[66] 8 AAC 45.052(a).

[67] Alaska Dep't of Lab. & Workforce Dev., Workers' Compensation Medical Summary, Form 07-6103 (Rev 8/2023), https://labor.alaska.gov/wc/forms/wc6103.pdf. We have considered an agency's forms when reviewing an agency interpretation of a statute. *See Premera Blue Cross*, 171 P.3d at 1119 (considering "the schedules, forms, and instructions" agency used when reviewing agency interpretation of statute).

[68] *See Dobos v. Ingersoll*, 9 P.3d 1020, 1027 (Alaska 2000) ("[M]edical records, including doctors' chart notes, opinions, and diagnoses, fall squarely within the business records exception to the hearsay rule."); *Liimatta v. Vest*, 45 P.3d 310, 318 (Alaska 2002) ("Medical records kept by hospitals and doctors are often admitted under the business records exception.").

would likely not be admissible over a hearsay objection.[69]  Yet these documents are listed on the form and therefore presumably fall under 8 AAC 45.052.[70]  Moreover, the medical summary form uses the terms "medical report" and "medical record" interchangeably:  There is a box to check when there are no new "medical records" in a party's possession, and the form instructs a party to list medical *records* in chronological order in a chart which includes columns for the *report* date and type.[71]  In sum, the Board's form required by 8 AAC 45.052 does not distinguish documents based on their possible admissibility in a civil suit and appears to equate "medical reports" with all types of medical records.  This is consistent with the Board's interpretation of "medical reports" in Woodell's case.

Another relevant Board form is the Request for Cross-Examination form, which has had essentially the same structure since 1988.[72]  The form divides requests for cross-examination into two categories:  medical "reports" and nonmedical documents.[73]  The current form requires identification of the date of the medical

---

[69]     *See Geister v. Kid's Corps, Inc.*, AWCAC Dec. No. 045, at 19 (June 6, 2007), https://labor.alaska.gov/WCcomm/memos-finals/M_07-045.pdf (deciding that letters written to express opinions on "core issue" before Board were not within business records exception to hearsay rule).

[70]     *See* Alaska Dep't of Lab. & Workforce Dev., Workers' Compensation Medical Summary, Form 07-6103 (Rev 8/2023), https://labor.alaska.gov/wc/forms/wc6103.pdf.

[71]     *Id.*

[72]     *See* Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (1/94), https://labor.alaska.gov/wc/forms/wc6174.pdf; Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (9/88), *in* Alaska Dep't of Lab., Alaska Workers' Comp. Manual.

[73]     Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (1/94), https://labor.alaska.gov/wc/forms/wc6174.pdf.  Consistent with this form, a recent Board decision states that 8 AAC 45.052(c) is related to medical records while 8 AAC 45.120(f)-(j) is related to nonmedical records.  *Nie v. Peter Pan*

summary for each medical "report," just as the 1988 version of the form did.[74]  This form corresponds to the distinction between cross-examination requests related to medical documents (governed by 8 AAC 45.052) and other documents (governed by 8 AAC 45.120(f)).  Nothing on the form suggests that the form or the regulation distinguishes between medical documents that would be admissible over a hearsay objection in a civil proceeding and those that would not.

Finally, we consider administrative decisions that interpreted and applied 8 AAC 45.052.  Neither the Commission's decision nor Alaska Regional's supplemental brief cited any Board decisions to support the Commission's interpretation of the regulations, and we have found no Board decision or other Commission decision that construed the Board's regulations as the Commission did here.[75]  To the contrary, decisions after 1990, when the Board moved the provisions for cross-examination of the authors of medical reports to 8 AAC 45.052 from

---

*Seafood Co.*, AWCB Dec. No. 25-0001, 2025 WL 259026, at *23 (Jan. 10, 2025); *see also Corona v. State*, AWCB Dec. No. 20-0032, 2020 WL 2908904, at *23 (May 21, 2020) (making same distinction between 8 AAC 45.052(c) and 8 AAC 45.120(f)).

[74]    *See* Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (1/94), https://labor.alaska.gov/wc/forms/wc6174.pdf; Alaska Dep't of Lab. & Workforce Dev., Request for Cross-Examination, Form 07-6174 (9/88), *in* Alaska Dep't of Lab., Alaska Workers' Comp. Manual.

[75]    We have not found any Board decision that applied the Commission's interpretation of the regulation in Woodell's case except the Board's decision on remand in his case.  Nor has the Board changed any of its forms about cross-examination or submission of medical evidence in any way that might alert a litigant to the Commission's 2021 decision.

8 AAC 45.120,[76] have consistently tied cross-examination in 8 AAC 45.052 to *Smallwood*.[77]

For example, in 1995 the Board applied 8 AAC 45.052 to an opinion prepared by a doctor for use in Social Security disability adjudication.[78] As Alaska Regional argued in this case, the employer claimed that even if it had not complied with 8 AAC 45.052's requirements, it had an absolute right to cross-examine the doctor.[79] The Board rejected this argument.[80] It noted that in *Smallwood* we recommended that it adopt procedures related to cross-examination; the Board explained that 8 AAC 45.052 established those procedures.[81] The Board then decided the employer had not timely requested cross-examination under 8 AAC 45.052 and thus had waived the right to cross-examination.[82] The Board has continued to apply 8 AAC 45.052's waiver rule to physician opinion letters similar to the reports in Woodell's case.[83]

---

[76] 8 AAC Register 113 (Apr. 1990).

[77] *See, e.g.*, *Geister v. Kid's Corps, Inc.*, AWCAC Dec. No. 045, at 12 (June 6, 2007), https://labor.alaska.gov/WCcomm/memos-finals/M_07-045.pdf; *Nie*, 2025 WL 259026, at *23-24.

[78] *Lindekugel v. George W. Easley Co.*, AWCB Dec. No. 95-0161, 1995 WL 519282, at *1-4 (June 15, 1995).

[79] *Id.* at *2, *4.

[80] *Id.* at *4.

[81] *Id.*

[82] *Id.*

[83] *E.g.*, *Piasini-Branchflower v. Anchorage Sch. Dist.*, AWCB Dec. No. 17-0041, 2017 WL 1758168, at *19, *52-53 (Apr. 11, 2017) (applying rule that hearing request "trigger[s] the time to [file a] *Smallwood*" objection to opinion letter authored by claimant's doctor).

In a decision from 2020, the Board, fulfilling its obligation to self-represented litigants,[84] explained its regulations about cross-examination and cost-shifting.[85] As relevant to this case, the Board explained:

> First, parties must file and serve medical records on medical summaries; this is a continuing duty on all parties so long as a case is pending. AS 23.30.095(h); 8 AAC 45.052(a). If a party wants to cross-examine the medical records' authors, it may file a *Smallwood* objection. 8 AAC 45.052(c). Parties frequently file their *Smallwood* objections shortly after receiving a medical summary containing records whose authors they wish to question. This is not always effective in protecting the party's right to cross-examine the records' authors or in shifting the cost of producing the authors for cross-examination to the proffering party.
>
> . . . .
>
> There are a few exceptions to *Smallwood*; most notably, some medical records are admissible over a *Smallwood* objection if they are "business records" and thus exceptions to the hearsay rule under Alaska Evidence Rule 803(6).[86]

Applying the regulation, the Board noted that the employer had filed cross-examination requests when two medical reports were filed but had not requested cross-examination after the employee's affidavit of readiness for hearing.[87] The Board explained that the

---

[84]     *See Richard v. Fireman's Fund Ins. Co.*, 384 P.2d 445, 449 (Alaska 1963) ("[A] workmen's compensation board or commission owes to every applicant for compensation that duty of fully advising him as to all the real facts which bear upon his condition and his right to compensation . . . and of instructing him on how to pursue that right under the law.").

[85]     *Leigh v. Alaska Child.'s Serv.*, AWCB Dec. No. 20-0071, 2020 WL 4929661, at *39-40 (Aug. 18, 2020).

[86]     *Id.* (citation omitted).

[87]     *Id.* at *40.

employer waived cross-examination and had not shifted the costs of producing the witnesses to the employee.[88]

In another 2020 decision about cross-examination requests and medical evidence, the Board stated that 8 AAC 45.052 "addresses only medical records" and 8 AAC 45.120(f) "addresses everything else."[89] It explained the difference in deadlines by noting that it can be difficult to schedule medical providers' testimony[90] and that the parties would want to take this type of testimony after discovery was complete.[91] Having a deadline that follows a hearing request allows the parties time to schedule testimony from medical providers whom the parties have identified as necessary for their case.[92] This logic applies equally to documents prepared by medical professionals in the ordinary course of business and those prepared for purposes of litigation.

The Board has interpreted *Smallwood* and its regulations as allowing admission of documents in spite of a valid request for cross-examination when those documents could be admitted over objection in a civil proceeding.[93] That interpretation is consistent with our decision in *Frazier v. H.C. Price/CIRI Construction JV*, where

---

[88] *Id.*

[89] *Corona v. State*, AWCB Dec. No. 20-0032, 2020 WL 2908904, at *23 (May 21, 2020).

[90] If requests for cross-examination of medical providers were governed by 8 AAC 45.120(f), a party could wait until ten days before a hearing to file a cross-examination request.

[91] *Corona*, 2020 WL 2908904, at *23. A party filing an affidavit of readiness for hearing must swear it has completed discovery. AS 23.30.110(c).

[92] *See Corona*, 2020 WL 2908904, at *23.

[93] *Parker v. Power Constructors*, AWCB Dec. No. 91-0150, 1991 WL 216335, *3-4 (May 17, 1991); *see also Geister v. Kid's Corps, Inc.*, AWCAC Dec. No. 045, at 16-17 (June 6, 2007), https://labor.alaska.gov/WCcomm/memos-finals/M_07-045.pdf (recognizing that documents can be admitted over valid cross-examination request if they are admissible under a hearsay exception).

we clarified that *Smallwood* applies only to hearsay.[94] The Commission's 2021 decision effectively switched this rule, making documents that should be admissible in spite of a request for cross-examination and thus exempt from *Smallwood* into the only documents subject to the requirements of a regulation intended to implement *Smallwood*.

Finally, we note that Alaska Regional filed three of the four letters at issue here with medical summary forms, in conformity with 8 AAC 45.052. Therefore, Alaska Regional's own practice in this case was consistent with the Board's interpretation that the term "medical reports" used in 8 AAC 45.052 includes opinion letters by doctors prepared for litigation.

The regulatory language and forms used to implement 8 AAC 45.052, as well as the Board's consistent practice, support the Board's interpretation of "medical reports" as including written opinions prepared for litigation. We therefore hold that this interpretation was reasonable and that the Commission's decision reversing it was error.

### 4. Whether the Board abused its discretion in applying the regulation to the facts of this case

We also hold that the Board did not abuse its discretion in applying the regulation to the facts of this case.[95] Alaska Regional filed requests to cross-examine the doctors who wrote three letters shortly after those letters had been filed with medical summary forms. It did not file another request to cross-examine those doctors either after Woodell filed an affidavit of readiness for the notice hearing in April 2019 or after he filed an affidavit of readiness for the merits hearing in November 2019. Alaska Regional filed a cross-examination request for Dr. Wigington one day late even though

---

[94]    794 P.2d 103, 106 (Alaska 1990).

[95]    *Jespersen v. Tri-City Air*, 547 P.3d 1042, 1051 (Alaska 2024) ("The Board's application of its regulations to the facts of a case is reviewed for abuse of discretion.").

it had timely opposed Woodell's affidavit of readiness for hearing.[96]  The Board's decision that these requests did not preserve Alaska Regional's cross-examination rights was consistent with 8 AAC 45.052's language and with prior Board decisions interpreting and applying that regulation.  It was not an abuse of discretion or violation of Alaska Regional's due process rights.

Therefore, we reverse that part of the 2021 Commission decision interpreting 8 AAC 45.052 and 8 AAC 45.120 as well as the Commission's decision that the Board violated Alaska Regional's due process rights when it decided that Alaska Regional waived cross-examination.

### C.    The Board's 2020 Compensation Award Must Be Reinstated.

We now consider the implications of reversing the Commission's decision.  Our supplemental briefing order invited the parties to address this issue.

Woodell's supplemental brief asks us to reinstate the 2020 Board's award of temporary total disability and medical benefits.  He also asks us to impose a penalty on Alaska Regional for frivolous controversion.

Alaska Regional's supplemental brief insists that the 2021 decision is the law of the case and that we cannot review it; it makes no argument about how the case should proceed if we do review and reverse that decision.  Its reply to Woodell's supplemental brief is similarly silent on this point.  Therefore, Alaska Regional has waived any argument about the proper disposition of this case in light of our conclusion that the Commission erred in 2021 when ruling that the Board violated Alaska Regional's right to cross-examination.[97]

---

[96]    Under 8 AAC 45.060, three days are added for service by mail, which made the cross-examination request due on December 2.  The request was filed on December 3.

[97]    *See Witt v. State, Dep't of Corr.*, 75 P.3d 1030, 1037 n.26 (Alaska 2003) ("Issues not briefed are deemed waived.").

This ruling was the sole basis for the Commission's decision to remand the matter to the Board in 2021. Although the Commission expressed some concerns about the Board's application of the presumption analysis, it ultimately concluded that any errors in this analysis were harmless. Indeed, after reviewing the evidence and applying the presumption framework, the Commission stated that it "must affirm" the compensation award. It remanded solely because of the cross-examination issue. Because the Commission did not identify other grounds for vacating the Board's 2020 decision awarding Woodell compensation, and because Alaska Regional waived any such arguments by failing to brief them, we conclude that the Board's 2020 decision awarding benefits should be reinstated.[98]

## V. CONCLUSION

We REVERSE in part the Commission's 2021 decision, VACATE the 2023 Commission decision and the 2022 Board decisions after the remand, and REMAND to the Commission to remand to the Board with instructions to reinstate the 2020 award of compensation and for further proceedings consistent with this decision.

---

[98] We cannot impose the penalty for frivolous controversion that Woodell seeks, nor do we address any claims Woodell made for additional benefits following the 2021 remand to the Board. If Woodell wishes to pursue other claims, he must use the Board's process to do so.